MORGAN, LEWIS & BOCKIUS LLP
FRANKLIN BROCKWAY GOWDY (047918)
DIANE L. WEBB (197851)
KIM ALEXANDER KANE (226896)
One Market, Spear Street Tower
San Francisco, CA  94105-1126
Tel:  415.442.1000; Fax:  415.442.1001
Email: fgowdy@morganlewis.com
        dwebb@morganlewis.com
        kkane@morganlewis.com

MARC J. SONNENFELD (*Pro Hac Vice*)
KAREN PIESLAK POHLMANN (*Pro Hac Vice*)
JILL M. BAISINGER (*Pro Hac Vice*)
1701 Market Street
Philadelphia, PA  19103-2921
Tel: 215.963.5000; Fax:  215.963.5001
Email: msonnenfeld@morganlewis.com
        kpohlmann@morganlewis.com
        jbaisinger@morganlewis.com

Attorneys for Nominal Defendant
Hewlett-Packard Company

WILSON SONSINI GOODRICH &
ROSATI
PROFESSIONAL CORPORATION
STEVEN M. SCHATZ (118356)
BORIS FELDMAN (128838)
DOUGLAS J. CLARK (171499)
KATHERINE L. HENDERSON
(242676)
650 Page Mill Road
Palo Alto, CA  94304-1050
Tel: 650.493.9300; Fax: 650.565.5100
Email:   sschatz@wsgr.com
         bfeldman@wsgr.com
         dclark@wsgr.com
         khenderson@wsgr.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| SAGINAW POLICE & FIRE PENSION FUND,<br><br>Plaintiff,<br><br>v.<br><br>MARC L. ANDREESSEN, LAWRENCE T. BABBIO, SARI M. BALDAUF, RAJIV L. GUPTA, JOHN H. HAMMERGREN, MARK V. HURD, JOEL Z. HYATT, JOHN R. JOYCE, ROBERT L. RYAN, LUCILLE S. SALHANY, and G. KENNEDY THOMPSON,<br><br>Defendants.<br><br>– and –<br><br>HEWLETT-PACKARD COMPANY, a Delaware corporation,<br><br>Nominal Defendant. | Case No. 5:10-CV-04720-EJD<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:      Friday, February 3, 2012<br>Time:      9:00 a.m.<br>Dept.:     Courtroom 1, 5th Floor<br>Judge:     Hon. Edward J. Davila<br><br>Complaint Filed:  October 19, 2010<br>Trial Dates:  None Set |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

HP'S NOTICE AND MOTION TO DISMISS
VERIFIED SHAREHOLDER DERIV. COMPLAINT

(5:10-CV-04720-EJD)

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3        **NOTICE IS HEREBY GIVEN** that on Friday, February 3, 2012 at 9:00 a.m., or as soon

4    thereafter as counsel may be heard by the above-referenced Court, located at 280 South First

5    Street, San Jose, California, in the courtroom of the Honorable Edward J. Davila, Courtroom 1,

6    Fifth Floor, Nominal Defendant Hewlett-Packard Company ("HP") will and hereby does move

7    the Court to dismiss the claims of Plaintiff Saginaw Police & Fire Pension Fund ("Plaintiff")

8    contained in Plaintiff's Verified Shareholder Derivative Complaint ("Complaint") pursuant to

9    Federal Rules of Civil Procedure 12(b)(6) and 23.1.

10        HP's Motion to Dismiss is based on this Notice of Motion and Motion to Dismiss

11   Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 23.1, the Memorandum of Points and

12   Authorities, HP's [Proposed] Order, the pleadings and papers on file herein, and any other matters

13   that may be presented to the Court at the time of the hearing.

14

15   Dated:  August 15, 2011                          MORGAN, LEWIS & BOCKIUS LLP

16

17                                                    By:  /s/ Marc J. Sonnenfeld

18                                                         Marc J. Sonnenfeld
                                                           Attorneys for Nominal Defendant
19                                                         Hewlett-Packard Company

20

21

22

23

24

25

26

27

28

HP'S NOTICE AND MOTION TO DISMISS
VERIFIED SHAREHOLDER DERIV. COMPLAINT                              (5:10-CV-04720-EJD)

1

## TABLE OF CONTENTS

2

**Page**

3   I.   STATEMENT OF ISSUES ........................................................................................... 1

4   II.   SUMMARY OF ARGUMENT ................................................................................... 1

5   III.   BACKGROUND TO THIS LITIGATION ................................................................. 3

6         A.   Procedural Background ................................................................................... 3

7         B.   The Parties ...................................................................................................... 4

8              1.   Plaintiff Saginaw Police & Fire Pension Fund ................................... 4
               2.   Nominal Defendant Hewlett-Packard Company ................................... 4
9              3.   HP's Board Of Directors ...................................................................... 4

10        C.   The Substantive Claims In This Litigation .................................................... 4

11             1.   Claims Related To The Settled DOJ Litigation ................................... 4
               2.   The Ongoing FCPA Investigations ....................................................... 5

12        D.   Demand Futility Allegations ........................................................................... 6

13             1.   The DOJ Litigation ............................................................................... 6
               2.   The Ongoing FCPA Investigations ....................................................... 7

14   IV.   ARGUMENT ............................................................................................................. 7

15        A.   Federal Procedural And Delaware Substantive Law Impose Uniquely High
                Standards For Pleading That Demand Is Excused As Futile ................................. 7
16
               1.   The Right To Bring Litigation On Behalf Of A Corporation
17                  Ordinarily Belongs To Its Board Of Directors ............................................ 7
               2.   To Bring Derivative Litigation Based On A Demand Futility
18                  Theory, Plaintiff Must Plead Particularized Facts Overcoming The
                   Presumption That The Directors Can And Will Act In The Best
19                  Interests Of The Company ............................................................................ 8

20        B.   Plaintiff Does Not Plead That At Least Five Members Of HP's Board Are
                Incapable Of Impartial Judgment ........................................................................ 10
21
               1.   There Are No Allegations That Any Board Member Lacks
22                  Independence Or Is Interested By Reason Of Any Personal,
                   Financial Or Other Considerations ............................................................ 10
23             2.   There Are No Allegations That Any Board Member Is Interested
24                  Because Of A Supposed Risk Of Personal Liability ................................... 12

25                  a.   Plaintiff's Claims Are Based On A Failure To Engage In
                        Oversight, Which Are The "Most Difficult" Claims To
26                      Advance ............................................................................................ 13
                   b.   There Is No Substantial Risk Of Liability Because No
27                      Allegations Establish A Sustained Or Systematic Board
                       Failure To Exercise Oversight ........................................................ 15

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS            i                    (5:10-CV-04720-EJD)

1

**TABLE OF CONTENTS**
(continued)

2

**Page**

3
           c.     The "Red Flags" Do Not Establish Conscious Disregard............ 17

4
      3.    Demand Is Not Excused As To Any Compensation Claims ................... 20

      4.    Demand Is Not Excused As To The "Unjust Enrichment" Claim ........... 22

5
   C.    Plaintiff's FCPA Claims Are Premature Because Investigations Are

6
       Ongoing......................................................................................... 22

7
V.    CONCLUSION ............................................................................................ 23

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

1

## TABLE OF AUTHORITIES

2

Page

3

**Cases**

4
*In re Accuray, Inc. S'holder Derivative Litig.*,
757 F. Supp. 2d 919 (N.D. Cal. 2010) ............................................................................. 20, 22

5

*In re Altera Corp. Derivative Litig.*,
6 No. C 06-03447, 2008 U.S. Dist. LEXIS 92157 (N.D. Cal. May 15, 2008) ........................... 19

7
*Aronson v. Lewis*,
473 A.2d 805 (Del. 1984) .............................................................................................. *passim*

8

*Beam v. Stewart*,
9 845 A.2d 1040 (Del. 2004) .................................................................................................. 8, 10

10
*In re Bidz.com, Inc. Derivative Litig.*,
CV 09-4984, 2011 U.S. Dist. LEXIS 25260 (C.D. Cal. Feb. 24, 2011) ........................... 18, 19

11
*Brehm v. Eisner*,
12 746 A.2d 244 (Del. 2000) ..................................................................................................... 8, 21

13
*In re Caremark Int'l Derivative Litig.*,
609 A.2d 959 (Del. Ch. 1996) ........................................................................................ *passim*

14
*In re CNET Networks, Inc. S'holder Derivative Litig.*,
15 483 F. Supp. 2d 947 (N.D. Cal. 2007) ................................................................................. 7, 12

16
*In re Cray Inc. Derivative Litig.*,
431 F. Supp. 2d 1114 (W.D. Wash. 2006) ............................................................................... 23

17
*David B. Shaev Profit Sharing Account v. Armstrong*,
18 No. Civ.A. 1449-N, 2006 WL 391931 (Del. Ch. Feb. 13, 2006) ........................................... 15

19
*Desimone v. Barrows*,
924 A.2d 908 (Del. Ch. 2007) ........................................................................................ *passim*

20
*In re Dow Chem. Co. Derivative Litig.*,
21 No. 4349, 2010 WL 66769 (Del. Ch. Jan. 11, 2010) ...................................................... *passim*

22
*Gagliardi v. Trifoods Int'l, Inc.*,
683 A.2d 1049 (Del. Ch. 1996) .......................................................................................... 10, 21

23
*Glazer v. Zapata Corp.*,
24 658 A.2d 176 (Del. Ch. 1993) ................................................................................................... 22

25
*Grobow v. Perot*,
539 A.2d 180 (Del. 1988) ......................................................................................................... 11

26
*Guttman v. Huang*,
27 823 A.2d 492 (Del. Ch. 2003) ......................................................................................... *passim*

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS

iii

(5:10-CV-04720-EJD)

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3   *In re Intel Corp. Derivative Litig.*,
       621 F. Supp. 2d 165, 174 (D. Del. 2009) ................................................. 19

4

*In re Isolagen Inc. Sec. & Derivative Litig.*,
5      No. 06-1302, 2007 WL 1101278 (E.D. Pa. Apr. 10, 2007) ...................... 23

6   *In re Maxim Integrated Prods., Inc.*,
       574 F. Supp. 2d 1046 (N.D. Cal. 2008) ...................................................... 9
7
    *Pogostin v. Rice*,
8      480 A.2d 619 (Del. 1984) ........................................................................... 12

9   *Potter v. Hughes*,
       546 F.3d 1051 (9th Cir. 2008)...................................................................... 9
10
    *Postorivo v. AG Paintball Holdings, Inc.*,
11     No. 2991-VCP, No. 3111-VCP, 2008 Del. Ch. LEXIS 29 (Del. Ch. Feb. 29, 2008)............... 13

12  *Rales v. Blasband*,
       634 A.2d 927 (Del. 1993) ............................................................ 7, 9, 10, 11
13
    *In re Sagent Tech., Inc. Derivative Litig.*,
14     278 F. Supp. 2d 1079 (N.D. Cal. 2003) ................................................. 9, 10

15  *Seminaris v. Landa*,
       662 A.2d 1350 (Del. Ch. 1995)..................................................................... 9
16
    *In re Silicon Graphics Inc. Sec. Litig.*,
17     183 F.3d 970 (9th Cir. 1999)............................................................. 7, 9, 12

18  *Spiegel v. Buntrock*,
       571 A.2d 767 (Del. 1990) ............................................................................. 8
19
    *Stone v. Ritter*,
20     911 A.2d 362 (Del. 2006) ...................................................................*passim*

21  *In re VeriFone Holdings, Inc. S'holder Derivative Litig.*,
       No. C 07-6347 MHP, 2010 U.S. Dist. LEXIS 88105 (N.D. Cal. Aug. 26, 2010) .............. 14, 18
22
    *In re Verisign, Inc. Derivative Litig.*,
23     531 F. Supp. 2d 1173 (N.D. Cal. 2007) .............................................. 7, 18

24  *In re The Walt Disney Co. Derivative Litig.*,
       731 A.2d 342 (Del. Ch. 1998)..................................................................... 21
25
    *White v. Panic*,
26     783 A.2d 543 (Del. 2001) ..................................................................... 21, 22

27  *White v. Panic*,
       793 A.2d 356 (Del. Ch. 2000), *aff'd*, 783 A.2d 543 (Del. 2001)............................. 21
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS

iv

(5:10-CV-04720-EJD)

**TABLE OF AUTHORITIES**
(continued)

**Page**

**Statutes & Rules**

Del. Ch. R. 23.1 ......................................................................................................................... 9

Fed. R. Civ. P. 23.1 ........................................................................................................... *passim*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS        v        (5:10-CV-04720-EJD)

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   STATEMENT OF ISSUES

Should the Complaint be dismissed for failure to plead demand futility with particularity as required by Federal Rule of Civil Procedure 23.1?

## II.   SUMMARY OF ARGUMENT

With this derivative complaint, Saginaw Police & Fire Pension Fund ("Plaintiff"), a purported shareholder of Hewlett-Packard Company ("HP" or the "Company"), seeks to divest HP's board of directors (the "Board") of the power and responsibility to make decisions for the Company.  Plaintiff's underlying claims assert that a small number of HP's hundreds of thousands of employees violated the law regarding certain federal contracts and that another, even smaller, group is the subject of investigations under the Foreign Corrupt Practices Act ("FCPA").  The threshold question in this litigation, though, is not whether such wrongdoing actually occurred but what party—Plaintiff or HP's Board—should determine what response is in HP's best interests.  Plaintiff contends that it is better equipped than HP's Board to decide how the Company should respond to these issues.  Governing Delaware substantive law and federal procedural law, however, preclude shareholders such as this Plaintiff from usurping the role of the Board unless there are particularized factual allegations explaining why the Board is incapable of deciding whether to initiate suit.  The allegations in the operative Verified Shareholder Derivative Complaint ("Complaint") do not meet the extraordinarily high pleading standards required for these derivative claims to proceed.

Federal Rule of Civil Procedure 23.1 governs this litigation, and it requires Plaintiff either to make a "demand" that the Board consider its claims or to set forth particularized facts explaining why demand would be "futile."  To establish "futility," in turn, Plaintiff must plead specific, individualized facts creating a reasonable doubt regarding the impartiality of a Board majority (in this case, at least five members of the ten-person Board in place when this Complaint was filed).  This demand requirement embodied in Rule 23.1 is not a technicality; it is a substantive right designed to give the corporation an opportunity to rectify the alleged wrong without litigation and to control any litigation that does arise.  Here, Plaintiff made no demand

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS                        1                        (5:10-CV-04720-EJD)

upon HP's Board before filing this action and asserts that demand would be futile. However, rather than including the particularized factual allegations that would cast doubt on the impartiality of the Board and allow such a claim to proceed, this Complaint virtually ignores the role of the Board. Instead, it recites allegations from long-settled litigation with the federal government and repeats HP's own disclosures regarding ongoing investigations. This is not enough to plead demand futility for at least the following reasons:

First, Plaintiff does not include particularized allegations raising a reasonable doubt that any member (much less five members) has a personal, financial, or other interest that would preclude an impartial assessment of Plaintiff's claims. There are, for example, no claims that any Board member received some benefit from any improper transaction, nor is there any claim that any Board member is beholden to someone else such that he or she could not make an independent decision.

Second, Plaintiff fails completely to establish its primary argument for demand futility— that the Board is improperly "interested" in the outcome of this case because of the risk of personal liability for breach of fiduciary duty. The Complaint does not allege that any Board member engaged in illegal conduct (there is, for example, no claim that any Board member committed an FCPA or contracting violation). Instead, the Complaint is based on the theory that the Board failed to prevent other employees from committing improper or illegal acts. These oversight claims, which are governed by the standards set forth in *In re Caremark International Derivative Litigation*, 609 A.2d 959 (Del. Ch. 1996), cannot proceed unless there are specific allegations showing that individual Board members *consciously* disregarded their fiduciary duties to manage HP. There are no such allegations in this Complaint. To the contrary, the Complaint acknowledges that the Board had proper supervisory structures in place and appropriate corporate governance procedures. Moreover, Plaintiff does not even bother to address the fact that several defendants were not members of the Board at the time the conduct in question occurred. The conclusory contention that the collective Board ignored its duties is not enough for these uniquely difficult claims to proceed.

Third, to the extent that Plaintiff intends to base claims on the Board's decision to award

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS

2

(5:10-CV-04720-EJD)

1  compensation to HP's former chief executive officer in 2007 through 2009, the Complaint is

2  utterly devoid of any particularized facts establishing that the Board acted outside the bounds of

3  valid business judgment in doing so.

4        Finally, Plaintiff has failed properly to plead even that any illegal or improper conduct

5  occurred with respect to the supposed FCPA violations.  These claims are premature, at best,

6  because the Complaint itself acknowledges that investigations into alleged violations are currently

7  ongoing, and the Complaint does not (and could not) contend that any violations have been found.

8  There can be no serious claim that HP's Board has somehow failed in its fiduciary duties by

9  waiting until the FCPA investigations have concluded before taking action.

10       For all of these reasons, the Complaint should be dismissed.

11  **III.    BACKGROUND TO THIS LITIGATION**

12       **A.    Procedural Background**

13       Plaintiff filed this Complaint on October 19, 2010 alleging causes of action against current

14  and former HP Board members for breach of fiduciary duty and unjust enrichment.  Pursuant to

15  the parties' stipulations, Judge Koh, to whom this case was then assigned, twice stayed this

16  matter.  The stays were to allow an independent Board committee composed of new Board

17  members not named in this suit to respond to a demand by another shareholder and to investigate

18  the allegations in this and other derivative cases.[1]  Orders dated Feb. 3, 2011 (Doc. 58) and Mar.

19  25, 2011 (Doc. 63).  On April 25, 2011, this matter was reassigned to this Court.  On May 5,

20  2011, the parties stipulated to another stay of this action, on which this Court has not specifically

21  ruled.

---

[1]    Various other derivative actions were filed close to the time this action was initiated.  Some cases are proceeding in the California and Delaware state courts.  Two other actions, *In re HP Derivative Litigation*, No. 5:10-cv-3608-EJD (N.D. Cal.), and *Copeland v. Lane*, No. 5:11-cv-1058-EJD (N.D. Cal.), are proceeding before this Court.  Plaintiffs in *HP Derivative Litigation* and *Copeland* have entered into confidentiality agreements with defendants to permit them to review the report and recommendation of the independent Board committee.  Plaintiff here declined to enter into a confidentiality agreement and instead demanded that motion practice commence immediately.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS            3                    (5:10-CV-04720-EJD)

### B.      The Parties

#### 1.      Plaintiff Saginaw Police & Fire Pension Fund

Plaintiff is an unincorporated employee retirement benefits trust with its principal place of business in Saginaw, Michigan, and allegedly is a shareholder of HP.  Compl. ¶ 17.

#### 2.      Nominal Defendant Hewlett-Packard Company

HP is a Delaware corporation with executive offices in Palo Alto, California.  *Id.* ¶ 18. HP has hundreds of thousands of employees and provides various products and technologies to individual consumers and businesses, including multi-vendor customer services, enterprise information technology infrastructure, networking products and resources, personal computing and other access devices, and imaging and printing-related products and services.  *Id.*

#### 3.      HP's Board Of Directors

Plaintiff names eleven former and current members of HP's Board as defendants:  Marc L. Andreessen, Lawrence T. Babbio, Sari M. Baldauf, Rajiv L. Gupta, John H. Hammergren, Joel Z. Hyatt, John R. Joyce, Robert L. Ryan, Lucille S. Salhany, G. Kennedy Thompson (the "Director Defendants"), and Mark V. Hurd ("Hurd").  *Id.* ¶¶ 19-29.  Many of these individuals were not on the Board at the time of the alleged wrongdoing described in the Complaint, which supposedly began in 2002.  *See, e.g.*, *id.* ¶ 69.  For example, Plaintiff alleges that Gupta did not join the Board until January 2009 and that Andreessen did not join the Board until September 2009.  *Id.* ¶¶ 19, 22.  Moreover, at the time the Complaint was filed, Hurd had left his Board and executive positions at HP, *id.* ¶ 34, leaving a ten-person Board.  (A chart of the directors and their tenure is attached hereto as Exhibit A.)  The Complaint does not allege that any of the ten Director Defendants were employed by HP or performed any role other than that of director.

### C.      The Substantive Claims In This Litigation

The Complaint bases its underlying claims of breach of fiduciary duty and unjust enrichment on two events.  The first relates to settled litigation with the U.S. Department of Justice ("DOJ"); the second relates to pending investigations in Europe.

#### 1.      Claims Related To The Settled DOJ Litigation

In 2004, two private individuals filed a civil qui tam complaint under the False Claims Act

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS

4

(5:10-CV-04720-EJD)

("FCA") in the United States District Court for the Eastern District of Arkansas. The complaint alleged that HP and several other companies used various "partnership" and "alliance" programs that resulted in the submission of false claims in connection with federal government contracts. *Id*. ¶ 86. One of the other companies accused in the complaint of wrongdoing was NCR, a company where Hurd had previously served as chief operating officer and chief executive officer; the qui tam complaint contended that Hurd had participated in some way in improper conduct while at NCR. *Id.* ¶ 83. In April 2007, the DOJ intervened in that litigation and alleged that HP and four other companies violated the FCA and the Anti-Kickback Act of 1986 ("AKA"). *Id.* ¶¶ 85-86.

HP and the United States ultimately settled the FCA and AKA claims in August 2010. The settlement agreement attached to the Complaint explicitly states that the agreement is "neither an admission of liability by HP nor a concession by the United States that its claims are not well-founded. HP expressly denies the allegations that it has engaged in any wrongful conduct in connection with the Covered Conduct or that it is liable under the [FCA], [AKA], or any other civil, administrative or criminal cause of action with regard to such contentions or allegations." *Id*., Ex. A, para. E. Despite the settlement, Plaintiff alleges that HP could face *future* damage from prosecution of claims not released or a suspension or debarment from bidding on future government contracts. *Id*. ¶¶ 93-94. Other than speculation, there are no allegations that any such claim or prosecution has occurred or could possibly occur. Moreover, Plaintiff includes no allegations regarding the outcome of any claims pertaining to NCR or Hurd, neither of which is mentioned in the settlement agreement.

### 2.     The Ongoing FCPA Investigations

Plaintiff separately brings claims based on HP's supposed violation of the FCPA. The Complaint alleges that "[a]ccording to news reports, German and Russian authorities are investigating whether three HP executives bribed officials in Russia" to win a €35 million contract referred to as the Russia GPO deal. *Id*. ¶ 95. In its Form 10-Q dated September 9, 2010, HP disclosed that the German Public Prosecutor's Office had requested information on several non-public sector transactions entered into by HP and its subsidiaries in or around 2006 involving

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS

5

(5:10-CV-04720-EJD)

1    one or more persons involved in the Russia GPO deal.  *Id.* ¶ 101.  In addition, Plaintiff alleges

2    that the DOJ and Securities and Exchange Commission ("SEC") are investigating the Russia GPO

3    deal and potential violations of the FCPA.  *Id.* ¶¶ 10, 102.  The Complaint provides no other facts

4    about the ongoing investigations, nor does it cite any information beyond what was set forth in

5    news reports and HP's public filings.

6            **D.      Demand Futility Allegations**

7            Plaintiff did not make a demand that HP's Board consider the claims made in this

8    Complaint.  Instead, Plaintiff contends that demand is excused as futile because HP's Board

9    cannot impartially address the merits of the claims at issue.  *Id.* ¶ 104.

10           **1.      The DOJ Litigation**

11           With respect to the DOJ litigation, Plaintiff does not contend that any Board member

12   engaged in wrongful conduct; rather, Plaintiff claims that the Board was aware of the alleged

13   wrongdoing and failed to take appropriate action.  The Complaint asserts that because the Board

14   as a whole and the audit committee in particular reviewed the document before its filing, the

15   Board must have known of "illegal and unethical" conduct in June 2007 based on a Form 10-Q

16   that described the allegations in the DOJ's complaint against HP.  *Id.* ¶ 87; *see also id.* ¶ 88

17   (making similar argument based on December 2007 Form 10-K that identified litigation).

18   Plaintiff also argues that generalized (and contested) recitals in the settlement agreement asserting

19   that unspecified conduct occurred through 2009 somehow demonstrate misconduct by the *Board*.

20   *Id.* ¶¶ 89; *see also id.* ¶ 104 (arguing same).  There are, however, no allegations regarding any

21   Board member's knowledge of supposed wrongdoing before the June 2007 filing (i.e., during the

22   time the supposedly wrongful conduct occurred); nor are there any allegations explaining what

23   the *Board* did after June 2007 that was wrongful.  Plaintiff also asserts that the Board acted

24   improperly by awarding Hurd compensation during his tenure at HP.  *Id.* ¶ 90.  Plaintiff contends

25   that the Board should have declined to award compensation based on Hurd's supposed

26   misconduct at NCR or because he somehow failed to act properly while employed by HP.  *Id.*

27           From these allegations, Plaintiff avers that demand is excused because the Board is

28   interested based on its members' unspecified "economic incentive" not to investigate and expose

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS              6                    (5:10-CV-04720-EJD)

1   their "role" in permitting legal violations. *Id.* ¶ 105. There are no allegations identifying the role

2   of any particular director or explaining how individuals who joined the Board in, for example,

3   2009, *id.* ¶ 19, could face any "incentive" not to investigate. Plaintiff also asserts that the

4   Director Defendants are interested because they risk a "substantial likelihood of liability" because

5   they "allowed" HP to engage in conduct resulting in penalties, by disregarding unspecified "red

6   flags" and by awarding Hurd compensation during the period of 2007 through 2009. *Id.* ¶ 106.

7   Finally, the Complaint alleges that unspecified Board "decisions" are not the product of "a valid

8   exercise of business judgment" and, thus, that demand is futile. *Id.* ¶ 104.

9                    **2.      The Ongoing FCPA Investigations**

10          There are no specific demand futility allegations with respect to the pending FCPA

11  investigations. Instead, Plaintiff apparently relies on generic allegations stating that the Director

12  Defendants "allowed" HP to engage in illegal conduct and, thus, face a substantial likelihood of

13  liability. *Id.* ¶ 14.

14  **IV.    ARGUMENT**

15          The Complaint is a cobbled-together document that does not even attempt to plead the

16  requisite particularized facts that would excuse demand. It is precisely the type of complaint that

17  is routinely dismissed under governing Delaware law.[2]

18          **A.    Federal Procedural And Delaware Substantive Law Impose Uniquely High
                    Standards For Pleading That Demand Is Excused As Futile.**
19

20                  **1.      The Right To Bring Litigation On Behalf Of A Corporation Ordinarily
                            Belongs To Its Board Of Directors.**

21          A shareholder does not have standing to sue in his or her individual capacity for injury to

22  a corporation. *In re Verisign, Inc. Derivative Litig.*, 531 F. Supp. 2d 1173, 1188 (N.D. Cal.

23  2007). Rather, such claims must be brought derivatively. In a derivative suit, the plaintiff

24  shareholder seeks to assert a claim on behalf of the company for harm done to the company.

25  _____

26  [2]   HP is incorporated in Delaware. Compl. ¶ 18. The circumstances under which demand
        would be excused as futile are determined by the law of the state of incorporation. *In re Silicon
27      Graphics Inc. Sec. Litig.*, 183 F.3d 970, 989-90 (9th Cir. 1999); *In re CNET Networks, Inc.
        S'holder Derivative Litig.*, 483 F. Supp. 2d 947, 954 (N.D. Cal. 2007); *Rales v. Blasband*, 634
28      A.2d 927, 931 n.7 (Del. 1993). Thus, Delaware law applies.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

HP'S MEMORANDUM OF POINTS AND                    7                        (5:10-CV-04720-EJD)
AUTHORITIES ISO MOTION TO DISMISS

1    The decision whether to initiate a lawsuit on behalf of a corporation ordinarily belongs to

2    the corporation's board of directors. *See, e.g.*, *Spiegel v. Buntrock*, 571 A.2d 767, 773 (Del.

3    1990). This follows from the "cardinal precept" of Delaware substantive law "that directors,

4    rather than shareholders, manage the business and affairs of the corporation." *Aronson v. Lewis*,

5    473 A.2d 805, 811 (Del. 1984), *overruled in part on other grounds in Brehm v. Eisner*, 746 A.2d

6    244 (Del. 2000). [3] "[B]y its very nature, a derivative action impinges on the managerial freedom

7    of directors." *Stone v. Ritter*, 911 A.2d 362, 366 (Del. 2006) (citation, internal punctuation

8    omitted). The courts have repeatedly recognized that the demand requirement is intended to

9    preserve this "managerial freedom" and to "insure that a stockholder exhausts his intracorporate

10   remedies, and then to provide a safeguard against strike suits." *Aronson*, 473 A.2d at 811-12; *see

11   also Beam v. Stewart*, 845 A.2d 1040, 1050 (Del. 2004) (explaining that the demand requirement

12   exists to "deter costly, baseless suits by creating a screening mechanism to eliminate claims

13   where there is only a suspicion expressed solely in conclusory terms").

14   Accordingly, a shareholder suit asserting derivative causes of action is permitted only if a

15   plaintiff can properly plead that a board has wrongfully refused demand or if demand is excused

16   because the directors cannot make an impartial decision regarding whether to initiate such

17   litigation. *Stone*, 911 A.2d at 366-67 (citing *Aronson*, 473 A.2d at 811). That is, the question is

18   not whether the underlying claims have merit, but which party—the board of directors or a single

19   shareholder—should have the right to determine how to advance the company's best interests.

20   **2.    To Bring Derivative Litigation Based On A Demand Futility Theory,
         Plaintiff Must Plead Particularized Facts Overcoming The
21       Presumption That The Directors Can And Will Act In The Best
         Interests Of The Company.**

22

23   Here, Plaintiff contends that demand would be futile. Federal Rule of Civil Procedure

24   23.1 sets forth the standards that must be met by a shareholder who seeks to advance such claims.

25   Such shareholders "must first demand action from the corporation's directors or plead *with*

26   _____

27   [3]   *Brehm* overturned one aspect of the standard of appellate review that had been applied in
     numerous Delaware cases, 746 A.2d at 253-54, but did not otherwise change relevant law.
28   Accordingly, this brief does not hereafter include the designation "overruled in part on other
     grounds in *Brehm*" unless *Brehm* specifically affects that case's substantive holding.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*particularity* the reasons why such demand would have been futile." *In re Silicon Graphics Inc.*

*Sec. Litig.*, 183 F.3d 970, 989-90 (9th Cir. 1999) (emphasis added); *see also* Del. Ch. R. 23.1

(setting forth identical requirements).[4]

As Rule 23.1 suggests, a plaintiff faces a heavy burden seeking to proceed on a demand

futility theory. Claims of demand futility must be supported by particularized facts showing that

a demand upon the board would have been futile; conclusory allegations are not enough. Where a

plaintiff fails to meet this heightened standard, the complaint must be dismissed. Fed. R. Civ. P.

23.1; *Desimone v. Barrows*, 924 A.2d 908, 928 (Del. Ch. 2007); *Guttman v. Huang*, 823 A.2d

492, 499 (Del. Ch. 2003).

There are two tests used to analyze demand futility, both of which demonstrate the courts'

unwillingness to set aside a board decision unless a plaintiff has shown some reason to doubt that

the board exercised its discretion on an informed basis, in good faith, and with the honest belief

that the action was taken in the best interests of the company. *Aronson*, 473 A.2d at 812; *Rales*,

634 A.2d at 933-34. Both tests are implicated in this action. In claims arising out of board

*action*, a plaintiff must provide particularized factual allegations that establish a reasonable doubt

that (1) the directors are not disinterested and independent, or (2) the challenged transaction was

not the product of a valid exercise of business judgment. *Aronson*, 473 A.2d at 812. In claims

arising out of board *inaction*, a plaintiff must provide particularized factual allegations that

establish a reasonable doubt that the board could not have properly exercised its independent and

disinterested business judgment in responding to a demand. *Rales*, 634 A.2d at 933-34. In other

words, the *Rales* test involves only the first prong of *Aronson*. *See Seminaris v. Landa*, 662 A.2d

1350, 1354 (Del. Ch. 1995) (noting that "the second step of Aronson does not apply where

directors are sued for failing to take some action"(citation omitted)); *In re Sagent Tech., Inc.*

*Derivative Litig.*, 278 F. Supp. 2d 1079, 1087 (N.D. Cal. 2003) (same).

---

[4]    Rule 23.1 imposes only a pleading requirement with regard to demand, and, as noted, the
substantive demand requirement is an issue of state law. *Potter v. Hughes*, 546 F.3d 1051, 1054
n.1 (9th Cir. 2008). Rule 23.1 and Delaware Chancery Rule 23.1 are functionally identical, and
both require particularized facts for pleading both demand futility and wrongful refusal.
*Compare* Fed. R. Civ. P. 23.1 *with* Del. Ch. R. 23.1; *see also In re Maxim Integrated Prods., Inc.,*
*Derivative Litig.*, 574 F. Supp. 2d 1046, 1058 (N.D. Cal. 2008) (noting similarity of Rules).

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS                    9                    (5:10-CV-04720-EJD)

1    Regardless of the test, the "key principle upon which this area of our jurisprudence is

2    based is that the directors are entitled to a *presumption* that they were faithful to their fiduciary

3    duties." *Beam*, 845 A.2d at 1048 (Del. 2004).  In this case, Plaintiff thus must show with

4    particularized—not conclusory—facts that at least five of the ten directors on the Board at the

5    time the Complaint was filed[5] are incapable of impartially assessing plaintiff's claims.  *Id.* at

6    1048-49; *Guttman*, 823 A.2d at 499 ("I cannot accept cursory contentions of wrongdoing as a

7    substitute for the pleading of particularized facts.").  The particularized allegations must be

8    "specific to each director."  *Desimone*, 924 A.2d at 943.

9    Moreover, Delaware jurisprudence has repeatedly rejected theories that would allow

10    shareholders to incapacitate an entire board based on generally applicable allegations.  For

11    example, "it is well established that the simple expedient of naming a majority of otherwise

12    disinterested and well motivated directors as defendants and charging them with laxity or

13    conspiracy etc., will not itself satisfy the standards for permitting a shareholder to be excused

14    from demand."  *Gagliardi v. Trifoods Int'l, Inc.*, 683 A.2d 1049, 1055 (Del. Ch. 1996).

15    **B.**    **Plaintiff Does Not Plead That At Least Five Members Of HP's Board Are Incapable Of Impartial Judgment.**

16

17    Plaintiff fails to meet the high standards required for pleading demand futility because

18    there are no particularized allegations establishing a reasonable doubt that any member—much

19    less five members—of HP's Board lacks independence or is otherwise interested in the outcome

20    of any demand.

21    **1.**    **There Are No Allegations That Any Board Member Lacks Independence Or Is Interested By Reason Of Any Personal, Financial Or Other Considerations.**

22

23    An "interested" director is one who would receive a "personal financial benefit from a

24    transaction that is not equally shared by the stockholders" or who would be materially harmed by

25    a corporate decision in a way that the corporation and shareholders would not be harmed.  *Rales*,

26    634 A.2d at 936.  A director is "independent" if he or she can base a decision "on the corporate

27

28

---

[5]   *Sagent Tech.*, 278 F. Supp. 2d at 1087 (explaining that demand futility looks to board members in place at time complaint was filed; citing *Rales*, 634 A.2d at 934).

1  merits of the subject before the board rather than extraneous considerations or influences."

2  *Aronson*, 473 A.2d at 816, *accord Rales*, 634 A.2d at 936. One way in which a director might

3  lack independence is if he or she is "controlled" by another interested individual. *Aronson*, 473

4  A.2d at 816. Plaintiff does not plead that any Director Defendant is interested or lacks

5  independence because of personal, financial, or any similar consideration.

6      First, there is no allegation raising a reasonable doubt that any Director Defendant is

7  interested in the outcome of a demand. There are no allegations that any of the ten Director

8  Defendants expected to receive some sort of personal financial benefit from any transaction that

9  was not shared by the corporation. Throughout its allegations identifying the Director

10  Defendants, Plaintiff scatters claims about unrelated events and litigation in an apparent effort to

11  impugn the character of these individuals. *See, e.g.*, Compl. ¶¶ 20, 26, 28. The Complaint draws

12  no connection between these events, however, and any aspect of service as an HP director or any

13  Director Defendant's ability to consider a demand. Plaintiff generally asserts that Defendants

14  have an "economic incentive," *id.* ¶ 105, to avoid investigation but fails to explain what this

15  allegation means. To the extent that this refers to the Director Defendants' compensation,

16  demand futility cannot be pleaded merely on the basis of allegations that directors were paid for

17  their services and acted or would act to preserve their positions. *Grobow v. Perot*, 539 A.2d 180,

18  188 (Del. 1988). Likewise, to the extent that this is intended to assert that the Directors are

19  "interested" because they would not sue themselves, Delaware law specifically rejects this basis

20  for demand futility. *See, e.g.*, *Aronson*, 473 A.2d at 818.

21      Second, there are no allegations that any Director Defendant lacks independence. For

22  example, there are no allegations raising a reasonable doubt that any Director Defendant lacked

23  independence because he or she was "controlled" by another interested individual. *In re Dow*

24  *Chem. Co. Derivative Litig.*, No. 4349, 2010 WL 66769, at *7 (Del. Ch. Jan. 11, 2010). Nor are

25  there allegations that a majority of the Board was materially dependent upon Hurd's or anyone

26  else's good graces to make a living or was "beholden" to Hurd or any controlling person for any

27  other personal reason. Plaintiff's conclusory allegations regarding the Director Defendants'

28  committee service do not explain how such membership, without more, demonstrates that the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS                11                (5:10-CV-04720-EJD)

1   Director Defendants were conflicted or otherwise lacked independence. "Mere membership on a

2   committee or board, without specific allegations as to defendants' roles and conduct, is

3   insufficient to support a finding that the directors were conflicted." *CNET Networks*, 483 F.

4   Supp. 2d at 963. There are no allegations regarding any director's "role or conduct" while

5   serving on any committee.

6        In short, the Complaint is devoid of facts raising a reasonable doubt that any director had

7   any personal financial interest, was beholden to any other interested party, or otherwise conflicted

8   to such an extent that he or she could not exercise his or her business judgment. Thus, demand is

9   not excused on this basis.

10        **2.    There Are No Allegations That Any Board Member Is Interested
            Because Of A Supposed Risk Of Personal Liability.**

11

12        The Complaint contends that the Director Defendants are "interested" and cannot consider

13   a demand because they face a "substantial risk" of liability based on the underlying conduct

14   and/or because of their fear of "exposure" for their supposed role in causing violations of law.

15   Compl. ¶¶ 105-06. The "mere threat of personal liability for approving a questioned transaction,

16   standing alone, is insufficient to challenge either the independence or disinterestedness of

17   directors." *Aronson*, 473 A.2d at 815; *see also Pogostin v. Rice*, 480 A.2d 619, 625 (Del. 1984)

18   (holding that a plaintiff may not "bootstrap allegations of futility" by pleading merely that

19   directors participated in a challenged transaction or would be reluctant to sue themselves; citing

20   *Aronson*); *Silicon Graphics*, 183 F.3d at 990 (holding that the mere threat of liability for

21   approving a questioned transaction, standing alone, is insufficient to challenge the independence

22   or disinterestedness of directors).

23        Rather, a plaintiff must plead "that a majority of the board that must consider a demand

24   acted wrongfully . . . [and] the directors face a 'substantial likelihood' of personal liability."

25   *Guttman*, 823 A.2d at 501; *see also Stone*, 911 A.2d at 367 (holding same). A showing that the

26   potential for liability rises to a "substantial likelihood" requires particularized factual allegations

27   "detailing the precise roles that these directors played at the company, the information that would

28   have come to their attention in those roles, and any indication as to why they would have

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS        12        (5:10-CV-04720-EJD)

perceived the [wrongdoing]."  *Guttman*, 823 A.2d at 503; *see also Dow*, 2010 WL 66769, at \*12 (noting difficulty of prevailing on such an argument); *Postorivo v. AG Paintball Holdings, Inc.*, No. 2991-VCP, No. 3111-VCP, 2008 Del. Ch. LEXIS 29, at \*18-19 (Del. Ch. Feb. 29, 2008) (rejecting general assertion that directors could not consider demand because the complaint "allege[d] nothing close to the fact-intensive, director-by-director analysis required to meet the pleading standard for demand futility").  Plaintiff, which does not even bother to distinguish between directors who served at different time periods,[6] fails to meet these standards, particularly given that Plaintiff's theory of liability is not based on the Director Defendants' own misconduct but on their supposed failure to uncover wrongdoing by others.

### a.   Plaintiff's Claims Are Based On A Failure To Engage In Oversight, Which Are The "Most Difficult" Claims To Advance.

Plaintiff attempts to portray its allegations as the "knowing use of illegal means to pursue profit," Compl. ¶ 104, and as the affirmative presentation of false claims.  *Id.* ¶ 106.  In fact, though, none of the allegations in the Complaint contends (nor could it) that HP's Board submitted claims to the government, participated in any "partnership" programs, or itself engaged in FCPA violations.  *Id.* ¶¶ 68-83, 95-99.  There are certainly no allegations identifying the role of any particular director with respect to any particular conduct.  *Guttman*, 823 A.2d at 503. Virtually all of the allegations relating to the Director Defendants themselves merely identify those individuals or generally describe their duties.  *Id.* ¶¶ 19-28, 41-58.[7]  The only allegations that purport to connect the Director Defendants to the supposed violations of law are those that contend generally that the Director Defendants "disregarded" or failed to follow up on

---

[6]   Plaintiff treats the Director Defendants collectively, even though the Complaint itself alleges that only two directors (Babbio and Salhany) were on the Board from 2002 until the time the Complaint was filed.  Compl. ¶¶ 20, 27.  This "group" treatment extends to claims regarding the Russian transaction, which supposedly occurred in 2006.  *Id.* ¶ 10.  Four members of the Board (Andreessen, Gupta, Hyatt, and Joyce), though, are alleged to have joined in 2007 or later.  *Id.* ¶¶ 19, 22-24.  Indeed, Gupta and Andreessen are not alleged to have joined the Board until January and September 2009, respectively.  *Id.* ¶¶ 19, 22.

[7]   The only arguable exceptions are the allegations relating to Hurd's 2007-2009 compensation, *id.* ¶¶ 37-39, which are addressed subsequently.  *See infra* § IV.B.3.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS                    13                    (5:10-CV-04720-EJD)

1   information that was available to them. *Id.* ¶¶ 89, 91, 106.  That is, Plaintiff seeks to hold the

2   Director Defendants liable for the supposed misconduct of other individuals employed by HP.

3   Accordingly, this case sets forth a classic "*Caremark*" claim—a contention that the Director

4   Defendants face a substantial risk of liability for failing to engage in the proper oversight of

5   others.  *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996); *see also*

6   *Dow*, 2010 WL 66769, at *12 (explaining that such claims are effectively tested under *Rales*

7   standards).

8           Such claims are "possibly the most difficult theory in corporation law upon which a

9   plaintiff might hope to win a judgment." *Caremark*, 698 A.2d at 967.  This is because liability

10  for failing to oversee other individuals' conduct (here, the conduct of HP employees throughout

11  the U.S. and in Eastern Europe) can only be predicated on bad-faith conduct—i.e., a breach of the

12  duty of loyalty.  *Stone*, 911 A.2d at 369-70.  A "'necessary condition'" for such liability is "'a

13  sustained or systematic failure of the board to exercise oversight.'"  *Id*. at 364 (quoting *Caremark*,

14  698 A.2d at 971).  More specifically, a plaintiff must allege with particularity either that the board

15  (a) "utterly failed to implement any reporting or information system or controls" or (b) "having

16  implemented such a system or controls, consciously failed to monitor or oversee its operations

17  thus disabling themselves from being informed of risks or problems requiring their attention." *Id*.

18  at 370.  "In either case, imposition of liability requires a showing that the directors *knew* that they

19  were not discharging their fiduciary obligations." *Id.* at 370 (quoting *Guttman*, 823 A.2d at 506

20  n.34) (emphasis added); *Desimone*, 924 A.2d at 940 (emphasizing same and stating that

21  *Caremark* requires pleading of "facts suggesting that the board knew that internal controls were

22  inadequate, that the inadequacies could leave room for illegal or materially harmful behavior, and

23  that the board chose to do nothing about the control deficiencies that it knew existed"); *Guttman*,

24  823 A.2d at 506 (explaining that *Caremark* "premises liability on a showing that the directors

25  were conscious of the fact that they were not doing their jobs"); *In re VeriFone Holdings, Inc.*

26  *S'holder Derivative Litig.*, No. C 07-6347 MHP, 2010 U.S. Dist. LEXIS 88105, at *12 (N.D. Cal.

27  Aug. 26, 2010) (same).

28

1

b. **There Is No Substantial Risk Of Liability Because No Allegations Establish A Sustained Or Systematic Board Failure To Exercise Oversight.**

2

3      The Complaint contains no allegations establishing "conscious" awareness of a failure to

4   perform requisite oversight duties.  As to the DOJ litigation, Plaintiff includes only generalized

5   claims that are insufficient as a matter of law.  There are certainly no particularized allegations

6   establishing that any member of the Board knew that HP was engaging in illegal conduct or failed

7   to implement appropriate systems that would allow the Board to remain apprised of HP's

8   employees' conduct.  There are no allegations at all—conclusory or otherwise—with respect to

9   the FCPA claims.

10     Delaware courts have found that the required "utter failure" to exercise oversight "might

11   take the form of facts that show the company entirely lacked an audit committee or other

12   important supervisory structure, or that a formally constituted audit committee failed to meet."

13   *Caremark*, 698 A.2d at 971; *see also David B. Shaev Profit Sharing Account v. Armstrong*, No.

14   Civ. A. 1449-N, 2006 WL 391931, at *5 (Del. Ch. Feb. 13, 2006).  Here, the Complaint

15   acknowledges that the HP Board had an audit committee and numerous other committees.  *See,*

16   *e.g.*, Compl. ¶ 30.  It also concedes that the audit committee had a charter and other guidance

17   setting forth the manner in which committee duties should be exercised.  *Id.* ¶¶ 56-58.  The

18   Complaint does not contend that the audit committee failed to meet or explain how the committee

19   failed to oversee or implement a supervisory structure.  To the contrary, the Complaint explains

20   the Board established "Corporate Governance Guidelines" that included ethical and reporting

21   standards and that provided for the Board to receive annual and semiannual reports from an ethics

22   and compliance committee.  *Id.* ¶¶ 51-55.  The Complaint also establishes that HP had in place

23   specific business standards prohibiting bribery.  *Id.* ¶ 49.  These allegations "implicitly

24   acknowledge" that the Board did not "utterly fail" to establish appropriate committees or

25   supervisory structures.  *Dow*, 2010 WL 66769, at *13 n.85.

26     There are also no allegations that any Director Defendant, having implemented such a

27   system or controls, failed to monitor or oversee them and thus disabled him- or herself from being

28   informed of risks or problems requiring attention.  *Guttman*, 823 A.2d at 507 (dismissing

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS                    15                    (5:10-CV-04720-EJD)

complaint for failure to make a pre-suit demand; noting that "it is impossible to tell anything about financial compliance systems in place" because complaint failed to provide any particularized facts about the audit committee, the roles of the individual directors, or the use of independent auditing firms); *Dow*, 2010 WL 66769, at *13 n.85 (stating that plaintiff's inclusion of allegations establishing "corporate governance procedures" precluded oversight claims because of plaintiff's failure to allege a lack of monitoring). There are, for example, no allegations that the Board failed to receive appropriate reports in connection with the compliance program that Plaintiff identifies, Compl. ¶¶ 54-55, or that it did not otherwise devote time and attention to matters within its purview.

Instead, Plaintiff attempts to meet its high burden through two basic arguments, neither of which meets the standards of Rule 23.1. First, Plaintiff contends that Board members reviewed a June 2007 Form 10-Q that discussed the DOJ's complaint against HP and signed a December 2007 Form 10-K that did the same. *Id.* ¶¶ 87-88. Based on these disclosures, Plaintiff asks this Court to make the inferential leap that the Board's review of these documents establishes that the Board had knowledge of the "illegal and unethical conduct at HP" but did nothing. *Id.* There are no allegations, though, explaining how any Director Defendant was aware of wrongful conduct by anyone at the time it was occurring or of the Board's own failure to implement appropriate systems. *Stone*, 911 A.2d at 369-70; *see also Desimone*, 924 A.2d at 940 (stating that complaint lacked particularized allegations suggesting that "internal controls were deficient, much less that the board, the audit committee, or [the company's] auditors had any reason to suspect that [a violation] was occurring"). Plaintiff argues that HP's retention of a consultant in February 2007 to assist with contracting issues somehow displays such contemporaneous knowledge, Compl. ¶ 85, but this allegation makes no sense: the fact that HP investigated matters does not suggest that any Board member was aware of or condoned wrongdoing as it occurred; nor does it suggest that any Board member consciously disregarded his or her duties to oversee the Company. To the contrary, retention of a consultant demonstrates attention to the Director Defendants' duties; it does not set forth a conscious *failure* to act.

Plaintiff's second argument is even more attenuated. As to the DOJ litigation, Plaintiff

1  relies on disputed language in the settlement agreement to contend that improper conduct

2  continued until 2009. *Id.* ¶ 89.  From this, Plaintiff draws the further inference that the Board

3  failed "to take adequate measures to address" ongoing problems.  *Id.*  Even assuming that

4  Plaintiff can base a claim on a preliminary recital that HP expressly challenged in the same

5  document, Plaintiff again utterly fails to connect any "ongoing problems" to any member of the

6  Board.  There are *no* allegations describing what the Board did or did not do from the time the

7  DOJ litigation was reported in 2007 through the time of the settlement.  There are no allegations

8  that any Director Defendant received information describing additional wrongdoing, and there is

9  certainly no allegation that any Board member consciously disregarded his or her duties in the

10  face of such information.  The Complaint's complete silence on this issue means that Plaintiff has

11  failed to meet its pleading burden.  *Guttman*, 823 A.2d at 507 (commenting that plaintiff's failure

12  to include any allegations regarding board's conduct—good or bad—meant that "there are not

13  well-pled factual allegations—as opposed to wholly conclusory statements—that the . . .

14  independent directors committed any culpable failure to provide oversight under the *Caremark*

15  standard").  As to the FCPA issues, Plaintiff again makes no allegations regarding the Board's

16  contemporaneous knowledge of any misconduct or its conscious failure to engage in oversight.

17  "With neither knowledge of bribery, nor any reason to suspect such conduct, the defendant

18  directors could not consciously disregard their duty to supervise against bribery."  *Dow*, 2010 WL

19  66769, at *13 (internal punctuation omitted).

20       Thus, Plaintiff has failed to allege particularized facts that any of the ten Director

21  Defendants consciously disregarded their oversight obligations in a sustained or systematic

22  fashion.

23            **c.     The "Red Flags" Do Not Establish Conscious Disregard.**

24       Plaintiff alternatively contends that the Director Defendants "disregarded manifest red

25  flags that HP lacked inadequate internal controls and was engaged in illegal activities."  Compl.

26  ¶ 106.  In doing so, Plaintiff relies almost entirely on the fact that the Board reviewed or signed

27  SEC forms reporting the DOJ litigation and the FCPA investigations.  *Id.* ¶¶ 87-88, 101-02.  This

28  approach is flawed for numerous reasons, but all of those flaws go to the Complaint's failure to

1   plead that the individual Board members were actually aware of misconduct by a small number of

2   HP's large workforce at the time that it occurred.

3         First, Plaintiff cannot base a "red flag" theory on "collective" allegations regarding the

4   Board members.  Rather, the allegations must explain specifically how particular Board members

5   learned of issues at a particular time.  The Complaint does not include such allegations.  *See*

6   *VeriFone*, 2010 U.S. Dist. LEXIS 88105, at *14 ("Plaintiffs do not allege with particularity how,

7   when or which of the directors became aware of the [wrongful activity] and how they failed to act

8   upon this knowledge[.]"); *In re Bidz.com, Inc. Derivative Litig.*, CV 09-4984, 2011 U.S. Dist.

9   LEXIS 25260, at *34 (C.D. Cal. Feb. 24, 2011) ("[T]he allegations that the collective Board of

10   Directors 'knew' of certain business facts [are] insufficient . . . as they do not identify who had

11   the knowledge or how it was acquired[.]); *Verisign*, 531 F. Supp. 2d at 1192-93 (finding that

12   plaintiffs failed to plead particularized facts as to individual directors' participation in

13   authorization or ratification of backdating; noting that a majority of directors could not have been

14   involved because the alleged action took place before their tenure).

15         Second, with respect to events preceding the securities filings, the Complaint fails even in

16   general terms to identify any red flags that came to the Board's attention that the Board

17   consciously disregarded.  There is also no allegation that, at any time from 2002 until 2007, the

18   Board was aware of and consciously disregarded improper conduct with respect to any

19   "partnership" agreement.  There is no allegation that, before December 2009, the Board was ever

20   aware of and consciously disregarded information regarding the alleged bribery in Russia—there

21   is certainly no allegation explaining what information came to the Board's attention in 2006,

22   2007, or 2008 about these issues.  Compl. ¶¶ 96-98.  These deficiencies are fatal to Plaintiff's

23   claims.  *See, e.g.*, *Desimone*, 924 A.2d at 940 (rejecting *Caremark* claim for failure to plead that

24   board members knew of wrongdoing; stating that no allegations showed that board was aware of

25   internal memorandum describing illegal conduct and stating that assertion that the practice was

26   "widely known" within the company did not mean that the directors also "must also have known"

27   of impropriety); *VeriFone*, 2010 U.S. Dist. LEXIS 88105, at *28 (dismissing complaint pursuant

28   to Rule 23.1 because no allegations established that director defendants were actually aware of

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS          18                    (5:10-CV-04720-EJD)

"red flags" and consequently had actual or constructive notice of accounting errors based on warnings); *Bidz.com*, 2011 U.S. Dist. LEXIS 25260, at *29-32 (dismissing complaint where plaintiffs failed to provide particularized factual allegations regarding the board's knowledge of "red flags"); *Dow*, 2010 WL 66769, at *13 (rejecting oversight claims because of failure to include any allegations establishing knowledge of bribery issue).

Third, the Board members' review or signature of securities filings is not enough, on its own, to impose liability under a "red flag" theory. *Guttman*, 823 A.2d at 498, 507 (dismissing complaint where plaintiff failed to allege "red flags" and addressed board's supposed knowledge only in conclusory terms; finding board's involvement in preparation and approval of financial statements insufficient); *In re Intel Corp. Derivative Litig.*, 621 F. Supp. 2d 165, 174 (D. Del. 2009) (stating that although the "complaint notes that nine of the Defendants signed Intel's 2005 and 2006 10-K's, which publicly reported . . . ongoing investigations," this allegation was insufficient to show the directors' constructive knowledge that their failure to respond to the "red flags" would be a breach of their fiduciary duties).  As already described, the Complaint is completely silent as to how the Board responded to the matters described in the securities filings, and Plaintiff's failure to address this issue means that it has failed to establish culpable inaction. *See supra* § IV.B.2.b (citing *Guttman*, 823 A.2d at 507).

Finally, the mere fact that HP was named as a defendant in the DOJ litigation or was the subject of FCPA investigations is not enough to conclude that the Director Defendants acted improperly and thus face a substantial risk of liability.  Compl. ¶ 106.  "Delaware courts routinely reject the conclusory allegation that because illegal behavior occurred, internal controls must have been deficient, and the board must have known so." *Desimone*, 924 A.2d at 939-40; *see also In re Altera Corp. Derivative Litig.*, No. C 06-03447, 2008 U.S. Dist. LEXIS 92157, at *21-22 (N.D. Cal. May 15, 2008) ("It is plainly insufficient to allege that 'because illegal behavior occurred, internal controls must have been deficient, and the board must have known so'") (citation omitted).  *Caremark* itself specifically found that a settlement was not enough to establish that the company's directors had abdicated their duty.  698 A.2d at 972.  Likewise, *Stone* rejected a claim that an investigation and settlement of criminal charges established a lack

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
19
(5:10-CV-04720-EJD)

1  of internal controls or proper oversight.  911 A.2d at 365-66, 373.  As the Delaware Chancery

2  Court explained and the Delaware Supreme Court agreed, plaintiffs did not plead red flags with

3  "facts showing that the board ever was aware that [the company's] internal controls were

4  inadequate, that these inadequacies would result in illegal activity, and that the board chose to do

5  nothing about problems it allegedly knew existed."  *Id.* at 370; *see also In re Accuray, Inc.*

6  *S'holder Derivative Litig.*, 757 F. Supp. 2d 919, 928 (N.D. Cal. 2010) ("Demand is not excused

7  where plaintiffs fail to plead facts showing either that 'the directors utterly failed to implement'

8  any controls or 'having implemented such . . . controls, consciously failed to monitor or oversee

9  [their] operation'") (citation omitted).

10      Accordingly, Plaintiff has not alleged facts sufficient to excuse demand based on the

11  Director Defendants' supposed risk of personal liability for failing to prevent the supposed

12  wrongdoing in connection with the DOJ litigation and the FCPA investigations.

13      **3.  Demand Is Not Excused As To Any Compensation Claims.**

14      Plaintiff includes, almost in passing, allegations regarding Hurd's compensation from

15  2007 through 2009.  Plaintiff's theory of liability appears to be that because the government's

16  complaint included contentions that Hurd might have engaged in improper conduct while at NCR,

17  the Board should not have allowed Hurd to receive as much compensation as he did while

18  employed at HP.  Plaintiff also seemingly contends that the Board should have denied Hurd

19  compensation because he did not stop the supposedly improper conduct at HP.  Compl. ¶ 90.

20  Plaintiff has not pleaded that demand is excused as to these contentions, either, regardless of

21  whether they are treated as affirmative Board decisions or Board "inaction."

22      First, Plaintiff does not raise a reasonable doubt that any Director Defendant is incapable

23  of addressing claims that Hurd himself engaged in wrongdoing in connection with the DOJ

24  litigation.  As already explained, no allegations contend that any Director Defendant was

25  dominated or controlled by or otherwise beholden to Hurd in a way that would keep a majority of

26  the Board from impartially assessing Hurd's 2007-2009 compensation.  *See supra* § IV.B.1.  This

27  is particularly true given that Hurd was not on the Board or employed by HP at the time the

28  Complaint was filed.  Compl. ¶ 34.  Thus, there are no allegations establishing a reasonable doubt

that the Board cannot exercise independent and disinterested judgment regarding this issue.

Second, assuming that the compensation claim is treated separately as an affirmative decision and thus is subject to the second *Aronson* test, Plaintiff does not establish a reasonable doubt that Hurd's 2007-2009 compensation could not be a rational business decision protected by the business judgment rule.  Delaware courts make clear that "a board's decision on executive compensation is entitled great deference." *Brehm*, 746 A.2d at 263.  A board's ability to determine if "a particular individual warrant[s] large amounts of money, whether in the form of current salary or severance provisions," is the essence of business judgment.  *In re The Walt Disney Co. Derivative Litig.*, 731 A.2d 342, 362 (Del. Ch. 1998) (citation omitted); *see also Gagliardi*, 683 A.2d at 1051 ("In the absence of facts casting a legitimate shadow over the exercise of business judgment reflected in compensation decisions, a court, acting responsibly, ought not to subject a corporation to the risk, expense and delay of derivative litigation, simply because a shareholder asserts . . . the belief and judgment that the corporation wasted corporate funds by paying far too much.").  Whether the claim is framed as a breach of fiduciary duty (as it is here) or a claim of corporate waste, a plaintiff must "overcome the general presumption of good faith by showing that the Board's decision was . . . egregious or irrational." *White v. Panic*, 783 A.2d 543, 554 n.36 (Del. 2001).

In this case, Plaintiff must effectively plead that the compensation Hurd received served "no corporate purpose" or that HP received "no consideration." *Brehm*, 746 A.2d at 263.  Rather than include such allegations, Plaintiff simply asserts that because Hurd was mentioned in the DOJ litigation, the Board must necessarily have breached its duty by awarding him compensation during the years of 2007 through 2009.  This assertion is insufficient because of the complete absence of any allegations establishing that Hurd actually engaged in wrongdoing, that the Board failed appropriately to consider these or other issues, or that the compensation was so excessive as to be impermissible even if the Director Defendants knew about these issues. *White v. Panic,* 793 A.2d 356, 367-68 (Del. Ch. 2000), *aff'd*, 783 A.2d 543 (Del. 2001) (agreeing that demand was not excused notwithstanding plaintiff's "moralistic, conclusory charges" of misconduct by executive; finding that plaintiff failed to allege that the board had exceeded the bounds of

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS

21

(5:10-CV-04720-EJD)

1   business judgment in choosing to settle certain suits without seeking "contribution from the

2   alleged perpetrator"); *id.* at 369 (rejecting claims based on payment of bonus when plaintiff

3   alleged "nothing beyond the amount of the bonus paid," which was not enough to "infer that the

4   bonus was awarded in bad faith").

5          Without something more than the conclusory allegations, this Court cannot "attempt to

6   itself evaluate the wisdom of the bargain or adequacy of the consideration." *Glazer v. Zapata*

7   *Corp.*, 658 A.2d 176, 183 (Del. Ch. 1993); *see also White*, 783 A.2d at 554 ("As we have

8   observed, courts are ill-fitted to attempt to weigh the 'adequacy' of consideration under the waste

9   standard or, *ex post*, to judge appropriate degrees of business risk." (internal citation omitted)).

10  Accordingly, Plaintiff has not pleaded that demand is excused as to the compensation claims.

11               **4.       Demand Is Not Excused As To The "Unjust Enrichment" Claim.**

12         Plaintiff includes Count III alleging unjust enrichment by the Director Defendants almost

13  as an afterthought.  Compl. ¶¶ 117-18.  There are no specific allegations explaining why demand

14  would be futile as to this claim.  As set forth above, Plaintiff cannot avoid demand simply by

15  naming all directors or by alleging that the Director Defendants received compensation for their

16  services to HP.  *See supra* § IV.B.1.  Moreover, there is no substantial risk of liability by any

17  Director Defendant.  Plaintiff does not allege that any particular Director Defendant performed

18  "no work" in exchange for his or her compensation, *see Accuray*, 757 F. Supp. 2d at 935-36, nor,

19  as already explained, does the Complaint allege that any Director Defendant benefitted from

20  illegal or improper conduct.  *See supra* § IV.B.1; *see also* Director Defendants' Motion to

21  Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) at 21-23.

22        **C.       Plaintiff's FCPA Claims Are Premature Because Investigations Are Ongoing.**

23         Finally, aside from all of the other flaws set forth above, Plaintiff's FCPA claims fail to

24  meet the standards of Rule 23.1 because Plaintiff has not pleaded and cannot plead that there is

25  any harm to redress.  As the Complaint acknowledges, the Russian and German investigations, as

26  well as domestic investigations, are all ongoing.  Compl. ¶¶ 95-96.  Allegations of injury to HP as

27  a result of such pending investigations are undeniably speculative at this stage.  Moreover,

28  Plaintiff has not alleged, and is unable to allege, that it will suffer any additional harm if the Court

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS          22                    (5:10-CV-04720-EJD)

1    declines to adjudicate Plaintiff's claims regarding the FCPA investigations before the

2    investigations are complete.  To the contrary, any "harm" to HP would be much more pronounced

3    were its Board to proceed on the assumption that criminal conduct had occurred before regulatory

4    and investigatory entities had drawn any such conclusions.  Accordingly, the claims premised on

5    HP's supposed violation of the FCPA are premature and should be dismissed.  *See, e.g.*, *In re*

6    *Isolagen Inc. Sec. & Derivative Litig.*, No. 06-1302, 2007 WL 1101278, at *2 (E.D. Pa. Apr. 10,

7    2007) (dismissing derivative complaint as premature because any damages or harm to the

8    company were contingent on outcome of pending litigation); *In re Cray Inc. Derivative Litig.*,

9    431 F. Supp. 2d 1114, 1134 (W.D. Wash. 2006) (stating that derivative suits are regularly

10   "foreclosed when they merely allege damages based on the potential costs of investigating,

11   defending, or satisfying a judgment or settlement for what might be unlawful conduct").

12   **V.    CONCLUSION**

13   This generalized, conclusory Complaint does not come close to meeting the standards of

14   Federal Rule of Civil Procedure 23.1 and Delaware substantive law.  Both require dismissal of

15   this Complaint because of Plaintiff's failure to set forth specific allegations establishing that any

16   member—much less five members—of HP's Board could not impartially address a demand

17   relating to the DOJ litigation and the ongoing FCPA investigations.

18   Dated:  August 15, 2011                    MORGAN, LEWIS & BOCKIUS LLP

19

20                                             By:  /s/ Marc J. Sonnenfeld
                                                    Marc J. Sonnenfeld
21

22                                             WILSON SONSINI GOODRICH & ROSATI,
                                               P.C.
23                                                  Steven M. Schatz

24                                             Attorneys for Nominal Defendant
                                               Hewlett-Packard Company
25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS                23                    (5:10-CV-04720-EJD)

**EXHIBIT A**

| Director | Dates of Service |
|---|---|
| Marc L. Andreessen | September 2009 – present |
| Lawrence T. Babbio | 2002 – present |
| Sari M. Baldauf | 2006 – present |
| Rajiv L. Gupta | January 2009 – present |
| John H. Hammergren | 2005 – present |
| Joel Z. Hyatt | 2007 – March 23, 2011 |
| John R. Joyce | 2007 - March 23, 2011 |
| Robert L. Ryan | 2004 - March 23, 2011 |
| Lucille S. Salhany | 2002 - March 23, 2011 |
| G. Kennedy Thompson | 2006 – present |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

HP'S MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS

1

(5:10-CV-04720-EJD)