# EXHIBIT A

Use these links to rapidly review the document
TABLE OF CONTENTS

Table of Contents

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

# SCHEDULE 14A

Proxy Statement Pursuant to Section 14(a) of
the Securities Exchange Act of 1934 (Amendment No.          )

Filed by the Registrant ☒

Filed by a Party other than the Registrant ☐

Check the appropriate box:

☐    Preliminary Proxy Statement

☐    **Confidential, for Use of the Commission Only (as permitted by Rule 14a-6(e)(2))**

☒    Definitive Proxy Statement

☐    Definitive Additional Materials

☐    Soliciting Material Pursuant to §240.14a-12

**HEWLETT-PACKARD COMPANY**

(Name of Registrant as Specified In Its Charter)

(Name of Person(s) Filing Proxy Statement, if other than the Registrant)

Payment of Filing Fee (Check the appropriate box):

☒    No fee required.

☐    Fee computed on table below per Exchange Act Rules 14a-6(i)(1) and 0-11.
    (1)    Title of each class of securities to which transaction applies:

    (2)    Aggregate number of securities to which transaction applies:

    (3)    Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11 (set forth the amount on which the filing fee is calculated and state how it was determined):

    (4)    Proposed maximum aggregate value of transaction:

    (5)    Total fee paid:

☐    Fee paid previously with preliminary materials.

☐ Check box if any part of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing.

(1) Amount Previously Paid:

(2) Form, Schedule or Registration Statement No.:

(3) Filing Party:

(4) Date Filed:

Table of Contents

*Compensation Risk Assessment*

From time to time, HP and the HR and Compensation Committee have reviewed the potential risks associated with the structure and design of its various compensation plans. During fiscal 2010, HP undertook a more comprehensive review of its material compensation plans and programs for all employees and determined that none of its compensation policies and practices is reasonably likely to have a material adverse effect on the company. In conducting this assessment, HP inventoried its material plans and programs, with particular emphasis on incentive compensation plans, including sales compensation, and presented a summary of its findings to the HR and Compensation Committee. Overall, HP believes that its programs generally contain a balance of fixed and variable features, as well as complementary metrics, reasonable goals and linear payout curves, all of which operate to mitigate risk and reduce the likelihood of employees engaging in excessive risk-taking behavior with respect to the compensation-related aspects of their jobs. In addition, the material plans and programs operate within a strong governance and review structure that serves and supports risk mitigation.

## Director Independence

HP's Corporate Governance Guidelines provide that a substantial majority of the Board will consist of independent directors and that the Board can include no more than three directors who are not independent directors. These standards are available on our website at www.hp.com/investor/director_standards. HP's director independence standards reflect the NYSE corporate governance listing standards. In addition, each member of the Audit Committee meets the heightened independence standards required for audit committee members under the applicable listing standards.

Under HP's Corporate Governance Guidelines, a director will not be considered independent in the following circumstances:

(1)     The director is, or has been within the last three years, an employee of HP, or an immediate family member of the director is, or has been within the last three years, an executive officer of HP.

(2)     The director has been employed as an executive officer of HP, its subsidiaries or affiliates within the last five years.

(3)     The director has received, or has an immediate family member who has received, during any twelve-month period within the last three years, more than $100,000 in direct compensation from HP, other than compensation for Board service, compensation received by a director's immediate family member for service as a non-executive employee of HP, and pension or other forms of deferred compensation for prior service with HP that is not contingent on continued service.

(4)     (A) The director or an immediate family member is a current partner of the firm that is HP's internal or external auditor; (B) the director is a current employee of such a firm; (C) the director has an immediate family member who is a current employee of such a firm and who participates in the firm's audit, assurance or tax compliance (but not tax planning) practice; or (D) the director or an immediate family member was within the last three years (but is no longer) a partner or employee of such a firm and personally worked on HP's audit within that time.

(5)     The director or an immediate family member is, or has been in the past three years, employed as an executive officer of another company where any of HP's present executive officers at the same time serves or has served on that company's compensation committee.

(6)     The director is a current employee, or an immediate family member is a current executive officer, of a company that has made payments to, or received payments from, HP for property

17

Table of Contents

or services in an amount which, in any of the last three fiscal years, exceeds the greater of $1 million, or 2% of such other company's consolidated gross revenues.

(7)     The director is affiliated with a charitable organization that receives significant contributions from HP.

(8)     The director has a personal services contract with HP or an executive officer of HP.

For these purposes, an "immediate family member" includes a person's spouse, parents, step-parents, children, step-children, siblings, mother and father-in-law, sons and daughters-in-law, brothers and sisters-in-law, and anyone (other than tenants or employees) who shares the director's home.

In determining independence, the Board reviews whether directors have any material relationship with HP. An independent director must not have any material relationship with HP, either directly or as a partner, stockholder or officer of an organization that has a relationship with HP, or any relationship that would interfere with the exercise of independent judgment in carrying out the responsibilities of a director. In assessing the materiality of a director's relationship to HP, the Board considers the issues from the director's standpoint and from the perspective of the persons or organizations with which the director has an affiliation and is guided by the standards set forth above.

In making its independence determinations, the Board considered transactions occurring since the beginning of 2007 between HP and entities associated with the independent directors or their immediate family members. The Board's independence determinations included reviewing the following transactions:

•     Each of Mr. Andreessen, Mr. Banerji, Mr. Hammergren, Mr. Hyatt and Ms. Senequier is an executive officer of a company with which HP enters into transactions for the purchase and sale of goods and services in the ordinary course of its business. The amount that HP paid in each of the last three fiscal years to each of these companies, and the amount received in each fiscal year by HP from each company, did not, in any of the previous three fiscal years, exceed the greater of $1 million or 2% of such other company's consolidated gross revenues.

•     Mr. Andreessen, Mr. Babbio, Ms. Baldauf, Mr. Gupta, Mr. Lane, Ms. Russo, Mr. Ryan, Ms. Senequier and Mr. Thompson, or one of their immediate family members, each is a non-employee director, trustee or advisory board member of another company that did business with HP at some time during the past three fiscal years. These business relationships were as a supplier or purchaser of goods or services in the ordinary course of business.

•     Each of Mr. Andreessen, Mr. Banerji, Mr. Hyatt, Ms. Salhany and Ms. Whitman, or one of their immediate family members, serves as a non-employee director, trustee or advisory board member for one or more charitable institutions to which HP has made charitable contributions during the previous three fiscal years. Contributions by HP (including employee matching contributions and discretionary contributions by HP) to each charitable institution other than Stanford Hospital and Clinics did not exceed $100,000 in any of the previous three fiscal years. During fiscal 2010, contributions by HP (including employee matching contributions and discretionary contributions by HP) to Stanford Hospital and Clinics totaled approximately $7,509,000. No such contributions were made to Stanford Hospital and Clinics during fiscal 2009 or fiscal 2008. Mr. Andreessen and Mr. Hyatt are members of the board of directors of Stanford Hospital and Clinics.

As a result of this review, the Board has determined that each current non-employee director and each of the non-employee director nominees standing for election, including Mr. Andreessen, Mr. Babbio, Ms. Baldauf, Mr. Banerji, Mr. Gupta, Mr. Hammergren, Mr. Hyatt, Mr. Joyce, Mr. Lane, Mr. Reiner, Ms. Russo, Mr. Ryan, Ms. Senequier, Ms. Salhany, Mr. Thompson and Ms. Whitman, and

18

each of the members of each standing Board committee, has no material relationship with HP (either directly or as a partner, stockholder or officer of an organization that has a relationship with HP) and is independent within the meaning of HP's director independence standards. Mr. Apotheker is not independent because of his status as President and Chief Executive Officer of HP.

## Executive Sessions

During fiscal 2010, the independent directors met in executive session 17 times. Those sessions were scheduled and chaired by the lead independent director. Beginning in fiscal 2011, the sessions are scheduled and chaired by the Chairman. Any independent director may request that an additional executive session be scheduled.

## Director Nominees

### Stockholder Recommendations

The policy of the Nominating and Governance Committee is to consider properly submitted stockholder recommendations of candidates for membership on the Board as described below under "Identifying and Evaluating Candidates for Directors." In evaluating such recommendations, the Nominating and Governance Committee seeks to achieve a balance of knowledge, experience and capability on the Board and to address the membership criteria set forth below under "Proposals to be Voted on—Election of Directors—Director Nominee Experience and Qualifications." Any stockholder recommendations proposed for consideration by the Nominating and Governance Committee should include the candidate's name and qualifications for Board membership and should be addressed to:

Corporate Secretary
Hewlett-Packard Company
3000 Hanover Street
Palo Alto, California 94304
Fax: (650) 857-4837

### Stockholder Nominations

In addition, HP's Bylaws permit stockholders to nominate directors for consideration at an annual stockholder meeting and to solicit proxies in favor of such nominees. For a description of the process for nominating directors in accordance with HP's Bylaws, see "Questions and Answers—Stockholder Proposals, Director Nominations and Related Bylaw Provisions—How may I recommend or nominate individuals to serve as directors?"

### Identifying and Evaluating Candidates for Directors

The Nominating and Governance Committee uses a variety of methods for identifying and evaluating nominees for director. The Nominating and Governance Committee, with the input of the Chairman, regularly assesses the appropriate size of the Board and whether any vacancies on the Board are expected due to retirement or otherwise. In the event that vacancies are anticipated, or otherwise arise, the Nominating and Governance Committee considers various potential candidates for director. Candidates may come to the attention of the Nominating and Governance Committee through current Board members, professional search firms, stockholders or other persons. Identified candidates are evaluated at regular or special meetings of the Nominating and Governance Committee and may be considered at any point during the year. As described above, the Nominating and Governance Committee considers properly submitted stockholder recommendations for candidates for the Board to be included in HP's proxy statement. Following verification of the stockholder status of people proposing candidates, recommendations are considered together by the Nominating and Governance Committee at a regularly scheduled meeting, which is generally the first or second meeting prior to the

19

Table of Contents

## DIRECTOR COMPENSATION AND STOCK OWNERSHIP GUIDELINES

Employee directors do not receive any separate compensation for their Board activities. In fiscal 2010, non-employee directors received the compensation described below.

Each non-employee director serving during fiscal 2010 was entitled to receive an annual cash retainer of $100,000 but could elect to receive an equivalent amount of securities in lieu of the cash retainer. Each non-employee director was also entitled to receive an annual equity retainer of $150,000, which was increased to $175,000 effective in March 2010. The equity retainer is paid at the election of the director either entirely in restricted stock units or half in restricted stock units and half in stock options. Under special circumstances, the securities portion of the annual retainer may be paid in cash, but no such exceptions were made during fiscal 2010. The number of shares subject to the restricted stock unit awards is determined based on the fair market value of HP common stock on the grant date, and the number of shares subject to the stock option awards is determined based on a Black-Scholes option valuation model. Non-employee directors are entitled to receive dividend equivalent units with respect to unvested restricted stock units. The restricted stock units and stock options generally vest after one year from the date of grant. Non-employee directors may elect to defer any portion of their annual retainer.

In addition to the annual retainer, non-employee directors who served as chairs of standing committees during fiscal 2010 received a retainer for such service in the amount of $20,000 for the chair of the Audit Committee, $15,000 for the chair of the HR and Compensation Committee, and $10,000 for the chair of the other Board committees. In addition, the director who served as lead independent director during fiscal 2010 received an additional retainer of $75,000 per year. Each non-employee director also received $2,000 for designated Board meetings attended in excess of six per year and $2,000 for each committee meeting attended in excess of six per year.

Non-employee directors are reimbursed for their expenses in connection with attending Board meetings (including expenses related to spouses when spouses are invited to attend Board events), and non-employee directors may use the company aircraft for travel to and from HP events. Each non-employee director also is eligible to contribute up to $100,000 worth of HP products each year to a school or qualified charity by paying 25% of the list price of those products, with HP contributing the remaining cost.

On September 30, 2010, the Board elected Mr. Lane to serve as a director of HP and designated Mr. Lane as non-executive Chairman of the Board effective November 1, 2010, the first day of HP's 2011 fiscal year. In connection therewith, the Board approved an equity retainer that was awarded to Mr. Lane following the end of fiscal 2010 consisting of 45,000 restricted stock units, one-third of which will vest on the first anniversary of the date of grant and two-thirds of which will vest on the third anniversary of the date of grant, with any unvested units to be forfeited in the event that Mr. Lane's service as non-executive Chairman terminates prior to the full vesting of the award. No other compensation will be paid to Mr. Lane for his service on the Board from November 1, 2010 until the annual meeting. If Mr. Lane is re-elected to the Board at that meeting, his compensation for service as a director and as non-executive Chairman thereafter will be established as part of the Board's regular annual review of director compensation.

21

# EXHIBIT B

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 05:00 PM 02/11/1998
981055490 - 2858384

## CERTIFICATE OF INCORPORATION

### OF

### HEWLETT-PACKARD COMPANY

### ARTICLE I

The name of this corporation is Hewlett-Packard Company (the "Corporation").

### ARTICLE II

The address of the Corporation's registered office in the State of Delaware is 1209 Orange Street, Wilmington, Delaware 19801, County of New Castle. The name of its registered agent at such address is The Corporation Trust Company.

### ARTICLE III

The nature of the business or purposes to be conducted or promoted by the Corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of Delaware.

### ARTICLE IV

The Corporation is authorized to issue two classes of stock to be designated, respectively, Preferred Stock, par value $0.01 per share ("Preferred"), and Common Stock, par value $0.01 per share ("Common"). The total number of shares of Common that the Corporation shall have authority to issue is 4,800,000,000. The total number of shares of Preferred that the Corporation shall have authority to issue is 300,000,000. The Preferred Stock may be issued from time to time in one or more series.

The Corporation shall from time to time in accordance with the laws of the State of Delaware increase the authorized amount of its Common if at any time the number of Common shares remaining unissued and available for issuance shall not be sufficient to permit conversion of the Preferred.

The Board of Directors is hereby authorized, subject to limitations prescribed by law and the provisions of this Article IV, by resolution to provide for the issuance of the shares of Preferred in one or more series, and to establish from time to time the number of shares to be included in each such series, and to fix the designation, powers, privileges, preferences, and relative participating, optional or other rights, if any, of the shares of each such series and the qualifications, limitations or restrictions thereof.

The authority of the Board with respect to each series shall include, but not be limited to, determination of the following:

A. The number of shares constituting that series (including an increase or decrease in the number of shares of any such series (but not below the number of shares in any such series then outstanding)) and the distinctive designation of that series;

B. The dividend rate on the shares of that series, whether dividends shall be cumulative, and, if so, from which date or dates, and the relative rights of priority, if any, of payment of dividends on shares of that series;

C. Whether that series shall have the voting rights (including multiple or fractional votes per share) in addition to the voting rights provided by law, and, if so, the terms of such voting rights;

D. Whether that series shall have conversion privileges, and, if so, the terms and conditions of such privileges, including provision for adjustment of the conversion rate in such events as the Board of Directors shall determine;

E. Whether or not the shares of that series shall be redeemable, and, if so, the terms and conditions of such redemption, including the date or dates upon or after which they shall be redeemable, and the amount per share payable in case of redemption, which amount may vary under different conditions and at different redemption rates;

F. Whether that series shall have a sinking fund for the redemption or purchase of shares of that series, and, if so, the terms and the amount of such sinking funds;

G. The rights of the shares of that series in the event of voluntary or involuntary liquidation, dissolution or winding up of the Corporation, and the relative rights of priority, if any, of payment of shares of that series; and

H. Any other relative rights, preferences and limitations of that series.

No holders of shares of the corporation of any class, now or hereafter authorized, shall have any preferential or preemptive rights to subscribe for, purchase or receive any shares of the corporation of any class, now or hereafter authorized, or any options or warrants for such shares, or any rights to subscribe for, purchase or receive any securities convertible to or exchangeable for such shares, which may at any time be issued, sold or offered for sale by the corporation, except in the case of any shares of Preferred Stock to which such rights are specifically granted by any resolution or resolutions of the Board of Directors adopted pursuant to this Article IV.

2

## ARTICLE V

The Corporation is to have perpetual existence.

## ARTICLE VI

For the management of the business and for the conduct of the affairs of the Corporation, and in further definition, limitation and regulation of the powers of the Corporation, of its directors and of its stockholders or any class thereof, as the case may be, it is further provided that:

A. The management of the business and the conduct of the affairs of the Corporation shall be vested in its Board of Directors. The number of directors of this Corporation shall not be less than eleven (11) nor more than twenty-one (21). The exact number of directors shall be fixed and may be changed from time to time, within the limits specified above, by an amendment to the Bylaws duly adopted by the stockholders or by the Board of Directors.

B. In furtherance and not in limitation of the powers conferred by the laws of the State of Delaware, the Board of Directors is expressly authorized to make, alter, amend, or repeal the Bylaws of the Corporation.

C. The directors of the Corporation need not be elected by written ballot unless the Bylaws of the Corporation so provide.

D. Advance notice of stockholder nomination for the election of directors and of any other business to be brought by stockholders before any meeting of the stockholders of the Corporation shall be given in the manner provided in the Bylaws of the Corporation.

E. No action shall be taken by the stockholders of the Corporation except at an annual or special meeting of the stockholders called in accordance with the Bylaws and no action shall be taken by the stockholders by written consent.

## ARTICLE VII

At the election of directors of the Corporation, each holder of stock of any class or series shall be entitled to cumulative voting rights as to the directors to be elected by each class or series in accordance with the provisions of Section 214 of the General Corporation Law of the State of Delaware.

## ARTICLE VIII

The name and mailing address of the incorporator are as follows:

> Marie Oh Huber
> Hewlett-Packard Company
> Corporate Legal Department
> 3000 Hanover Street
> Palo Alto, California 94304-1185

## ARTICLE IX

The Corporation reserves the right to amend, alter, change, or repeal any provision contained in this Certificate of Incorporation, in the manner now or hereafter prescribed by the laws of the State of Delaware, and all rights conferred herein are granted subject to this reservation.

## ARTICLE X

A. To the fullest extent permitted by the Delaware General Corporation Law as the same exists or as may hereafter be amended, no director of the Corporation shall be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director.

B. The Corporation may indemnify to the fullest extent permitted by law any person made or threatened to be made a party to an action or proceeding, whether criminal, civil, administrative or investigative, by reason of the fact that he, his testator or intestate is or was a director, officer or employee of the Corporation or any predecessor of the Corporation or serves or served at any other enterprise as a director, officer or employee at the request of the Corporation or any predecessor to the Corporation.

C. Neither any amendment nor repeal of this Article X, nor the adoption of any provision of the Corporation's Certificate of Incorporation inconsistent with this Article X, shall eliminate or reduce the effect of this Article X, with respect of any matter occurring, or any action or proceeding accruing or arising or that, but for this Article X, would accrue or arise, prior to such amendment, repeal, or adoption of an inconsistent provision.

## ARTICLE XI

Meetings of stockholders may be held within or without the State of Delaware, as the Bylaws may provide. The books of the Corporation may be kept (subject to any provision contained in the laws of the State of Delaware) outside of the State of Delaware at such place or places as may be designated from time to time by the Board of Directors or in the Bylaws of the Corporation.

4

**IN WITNESS WHEREOF**, the undersigned incorporator hereby acknowledges that the foregoing Certificate of Incorporation is her act and deed and that the facts stated herein are true.

*Marie Oh Huber*

**Marie Oh Huber**
Incorporator

Dated: February 11, 1998

5

**Hewlett-Packard Company**
3000 Hanover Street
Palo Alto, California 94304-1185

PO Box 10301
Palo Alto, CA 94303-0890
415/857-1501



February 11, 1998

**VIA OVERNIGHT COURIER**

Delaware Secretary of State
Fifth Floor, State Office Building
820 North French Street, 5th Floor
Wilmington, DE 19801

RE:   Consent to Use of Name of Hewlett-Packard Company

Ladies and Gentlemen:

I am an officer of Hewlett-Packard Company, a California domestic corporation and a Delaware
foreign corporation ("*HP-CA*"). This letter is to notify you that HP-CA consents to the use by
Hewlett-Packard Company, a Delaware domestic corporation, of the name "Hewlett-Packard
Company" as its corporate name in Delaware.

Please do not hesitate to contact me if you should have any questions.

Very truly yours,

HEWLETT-PACKARD COMPANY

Ann O. Baskins
Assistant Secretary and Managing Counsel

AOB6955/2-9-98

# EXHIBIT C

QuickLinks -- Click here to rapidly navigate through this document

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

# FORM 10-K

**(Mark One)**

☒     **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the fiscal year ended: October 31, 2005

or

☐     **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the transition period from              to

Commission file number 1-4423

# HEWLETT-PACKARD COMPANY
(Exact name of registrant as specified in its charter)

| | |
|---|---|
| **Delaware** | **94-1081436** |
| (State or other jurisdiction of incorporation or organization) | (I.R.S. employer identification no.) |
| **3000 Hanover Street, Palo Alto, California** | **94304** |
| (Address of principal executive offices) | (Zip code) |

Registrant's telephone number, including area code: **(650) 857-1501**

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Name of each exchange on which registered |
|---|---|
| Common stock, par value $0.01 per share | New York Stock Exchange, Inc. |
| Liquid Yield Option™ Notes due 2017 | The Nasdaq Stock Market, Inc. |
| | Pacific Exchange, Inc. |

Securities registered pursuant to Section 12(g) of the Act:
None

Indicate by check mark if the registrant is a well-known seasoned issuer as defined in Rule 405 of the Securities Act. Yes ☒   No ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act. Yes ☐   No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 (the "Exchange Act") during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☒   No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☐

Indicate by check mark whether the registrant is an accelerated filer (as defined in Exchange Act Rule 12b-2). Yes ☒   No ☐

Indicate by check mark whether the registrant is a shell company (as defined by Rule 12b-2 of the Exchange Act) Yes ☐   No ☒

The aggregate market value of the registrant's common stock held by non-affiliates was $58,942,534,082 based on the last sale price of common stock on April 29, 2005.

The number of shares of HP common stock outstanding as of November 30, 2005 was 2,837,653,721 shares.

**DOCUMENTS INCORPORATED BY REFERENCE**

| DOCUMENT DESCRIPTION | 10-K PART |
| --- | --- |
| Portions of the Registrant's notice of annual meeting of stockholders and proxy statement to be filed pursuant to Regulation 14A within 120 days after Registrant's fiscal year end of October 31, 2005 are incorporated by reference into Part III of this Report. | III |

**Marcela Perez de Alonso; age 51; Executive Vice President, Human Resources**

Ms. Perez de Alonso was elected Executive Vice President, Human Resources in January 2004. From 1999 until she joined HP in January 2004, Ms. Perez de Alonso was Division Head of Citigroup North Latin America Consumer Bank, in charge of the retail business operations of Citigroup in Puerto Rico, Venezuela, Colombia, Peru, Panama, the Bahamas and the Dominican Republic and also in charge of deposit products for the international retail bank until 2002.

**Shane V. Robison; age 52; Executive Vice President and Chief Strategy and Technology Officer**

Mr. Robison was elected Senior Vice President in 2002 in connection with HP's acquisition of Compaq. He has served as Chief Strategy and Technology Officer since May 2002. Prior to joining HP, Mr. Robison served as Senior Vice President, Technology and Chief Technology Officer at Compaq from 2000 to May 2002.

**Robert P. Wayman; age 60; Executive Vice President and Chief Financial Officer**

Mr. Wayman has served as Executive Vice President since December 1992 and Chief Financial Officer since 1984. Mr. Wayman served as interim CEO from February 2005 through March 2005. He was elected to HP's Board of Directors in February 2005 and previously had served on the Board from 1993 to 2002. Mr. Wayman also is a director of CNF Inc. and Sybase Inc.

**Employees**

We had approximately 150,000 employees worldwide as of October 31, 2005.

**Available Information and Exchange Certifications**

Our Annual Report on Form 10-K, Quarterly Reports on Form 10-Q, Current Reports on Form 8-K and amendments to reports filed or furnished pursuant to Sections 13(a) and 15(d) of the Securities Exchange Act of 1934, as amended, are available on our website at *http://investor.hp.com*, as soon as reasonably practicable after HP electronically files such reports with, or furnishes those reports to, the Securities and Exchange Commission. HP's Corporate Governance Guidelines, Board of Directors committee charters (including the charters of the Audit Committee, HR and Compensation Committee, and Nominating and Governance Committee) and code of ethics entitled "Standards of Business Conduct" also are available at that same location on our website. Stockholders may request free copies of these documents from:

Hewlett-Packard Company
Attention: Investor Relations
3000 Hanover Street
Palo Alto, CA 94304
(866) GET-HPQ1 or (866) 438-4771
http://investor.hp.com/docreq.cfm

We submitted the certification of the CEO of HP required by Section 303A.12(a) of the New York Stock Exchange (NYSE) Listed Company Manual, relating to HP's compliance with the NYSE's corporate governance listing standards, to the NYSE on March 29, 2005 with no qualifications.

We submitted the certification of the CEO of HP required by Rule 5.3(m) of the PCX Equities, Inc. (PCXE) Rules, relating to HP's compliance with the PCXE's corporate governance listing standards, to the PCXE on March 18, 2005 with no qualifications.

## ITEM 6. Selected Financial Data.

The information set forth below is not necessarily indicative of results of future operations, and should be read in conjunction with Item 7, "Management's Discussion and Analysis of Financial Condition and Results of Operations," and the Consolidated Financial Statements and notes thereto included in Item 8, "Financial Statements and Supplementary Data," of this Form 10-K, which are incorporated herein by reference, in order to understand further the factors that may affect the comparability of the financial data presented below.

### HEWLETT-PACKARD COMPANY AND SUBSIDIARIES
#### Selected Financial Data[1]

| | For the fiscal years ended October 31, | | | | |
| | 2005 | 2004 | 2003 | 2002 | 2001 |
|---|---|---|---|---|---|
| | In millions, except per share amounts | | | | |
| Net revenue | $ 86,696 | $ 79,905 | $ 73,061 | $ 56,588 | $ 45,226 |
| Earnings (loss) from operations[2] | 3,473 | 4,227 | 2,896 | (1,012) | 1,439 |
| Net earnings (loss) before cumulative effect of change in accounting principle[2][3] | 2,398 | 3,497 | 2,539 | (903) | 680 |
| Net earnings (loss) per share before cumulative effect of change in accounting principle:[2][3] | | | | | |
| Basic | $ 0.83 | $ 1.16 | $ 0.83 | $ (0.36) | $ 0.35 |
| Diluted | 0.82 | 1.15 | 0.83 | (0.36) | 0.35 |
| Cumulative effect of change in accounting principle, net of taxes[4] | — | — | — | — | (272) |
| Net loss per share for cumulative effect of change in accounting principle, net of taxes: | | | | | |
| Basic | — | — | — | — | (0.14) |
| Diluted | — | — | — | — | (0.14) |
| Cash dividends declared per share | 0.32 | 0.32 | 0.32 | 0.32 | 0.32 |
| At year-end: | | | | | |
| Total assets | $ 77,317 | $ 76,138 | $ 74,716 | $ 70,710 | $ 32,584 |
| Long-term debt | 3,392 | 4,623 | 6,494 | 6,035 | 3,729 |

[1] HP's Consolidated Financial Statements and notes thereto reflect HP's acquisition of Compaq on May 3, 2002. The occurrence of the acquisition in the middle of fiscal 2002 affects the comparability of financial information for fiscal 2005, 2004 and 2003 to prior fiscal years. Certain amounts have been reclassified to conform to the current year presentation.

[2] Earnings (loss) from operations includes the following items:

| | 2005 | 2004 | 2003 | 2002 | 2001 |
|---|---|---|---|---|---|
| | In millions | | | | |
| Restructuring charges | $ 1,684 | $ 114 | $ 800 | $ 1,780 | $ 384 |
| Pension curtailment | (199) | — | — | — | — |
| In-process research and development charges | 2 | 37 | 1 | 793 | 35 |
| Amortization of purchased intangible assets | 622 | 603 | 563 | 402 | 174 |
| Acquisition-related charges | — | 54 | 280 | 701 | 25 |
| Acquisition-related inventory write-downs | — | — | — | 147 | — |
| Total charges before taxes | $ 2,109 | $ 808 | $ 1,644 | $ 3,823 | $ 618 |
| Total charges, net of taxes | $ 1,512 | $ 571 | $ 1,127 | $ 3,031 | $ 493 |

31

In terms of how our execution has translated into financial performance, our key fiscal 2005 financial metrics were as follows:

| | HP Consolidated | TSG | | | | IPG | PSG | HPFS |
| | | ESS | HPS | Software | Total | | | |
|---|---|---|---|---|---|---|---|---|
| | | *in millions, except per share amounts* | | | | | | |
| Net revenue | $ 86,696 | $ 16,701 | $ 15,536 | $ 1,077 | $ 33,314 | $ 25,155 | $ 26,741 | $ 2,102 |
| Year-over-year net revenue % increase | 8% | 11% | 12% | 15% | 12% | 4% | 9% | 11% |
| Earnings (loss) from operations | $ 3,473 | $ 810 | $ 1,151 | $ (59) | $ 1,902 | $ 3,413 | $ 657 | $ 213 |
| Earnings (loss) from operations as a % of net revenue | 4.0% | 4.9% | 7.4% | (5.5)% | 5.7% | 13.6% | 2.5% | 10.1% |
| Net earnings | $ 2,398 | | | | | | | |
| Net earnings per share | | | | | | | | |
| Basic | $ 0.83 | | | | | | | |
| Diluted | $ 0.82 | | | | | | | |

Cash and cash equivalents for the fiscal year ended October 31, 2005 totaled $13.9 billion, an increase of $1.2 billion from the October 31, 2004 balance of $12.7 billion. The increase for fiscal 2005 was due primarily to net cash provided by operating activities and proceeds received from shares issued in connection with employee stock plans, partially reduced by the repayment of debt and repurchases of common stock.

We intend the discussion of our financial condition and results of operations that follows to provide information that will assist in understanding our Consolidated Financial Statements, the changes in certain key items in those financial statements from year to year, and the primary factors that accounted for those changes, as well as how certain accounting principles, policies and estimates affect our Consolidated Financial Statements.

The discussion of results of operations at the consolidated level is followed by a more detailed discussion of results of operations by segment.

For a further discussion of factors that could impact operating results, see the section entitled "Risk Factors" in Item 1A, which is incorporated herein by reference.

## CRITICAL ACCOUNTING POLICIES AND ESTIMATES

*General*

The Consolidated Financial Statements of HP are prepared in accordance with U.S. generally accepted accounting principles, which require management to make estimates, judgments and assumptions that affect the reported amounts of assets, liabilities, net revenue and expenses, and the disclosure of contingent assets and liabilities. Management bases its estimates on historical experience and on various other assumptions that it believes to be reasonable under the circumstances, the results of which form the basis for making judgments about the carrying values of assets and liabilities that are not readily apparent from other sources. Senior management has discussed the development, selection and disclosure of these estimates with the Audit Committee of HP's Board of Directors. Management believes that the accounting estimates employed and the resulting balances are reasonable; however, actual results may differ from these estimates under different assumptions or conditions.

# EXHIBIT D

Use these links to rapidly review the document

Table of Contents
ITEM 8. Financial Statements and Supplementary Data.
PART IV

Table of Contents

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

# FORM 10-K

**(Mark One)**

☒ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the fiscal year ended October 31, 2010

**Or**

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the transition period from         to

Commission file number 1-4423

# HEWLETT-PACKARD COMPANY
(Exact name of registrant as specified in its charter)

| | |
|---|---|
| **Delaware** | **94-1081436** |
| (State or other jurisdiction of | (I.R.S. employer |
| incorporation or organization) | identification no.) |
| **3000 Hanover Street, Palo Alto, California** | **94304** |
| (Address of principal executive offices) | (Zip code) |

Registrant's telephone number, including area code: **(650) 857-1501**

Securities registered pursuant to Section 12(b) of the Act:

| **Title of each class** | **Name of each exchange on which registered** |
|---|---|
| Common stock, par value $0.01 per share | New York Stock Exchange |

**Securities registered pursuant to Section 12(g) of the Act:**
None

Indicate by check mark if the registrant is a well-known seasoned issuer as defined in Rule 405 of the Securities Act. Yes ☒ No ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act. Yes ☐ No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☒ No ☐

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files). Yes ☒ No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☒

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act. (Check one):

| Large accelerated filer ☒ | Accelerated filer ☐ | Non-accelerated filer ☐<br>(Do not check if a smaller<br>reporting company) | Smaller reporting company ☐ |

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Act). Yes ☐ No ☒

The aggregate market value of the registrant's common stock held by non-affiliates was $121,784,010,000 based on the last sale price of common stock on April 30, 2010.

The number of shares of HP common stock outstanding as of November 30, 2010 was 2,190,425,610 shares.

## DOCUMENTS INCORPORATED BY REFERENCE

| DOCUMENT DESCRIPTION | 10-K PART |
|---|---|
| Portions of the Registrant's proxy statement related to its 2011 Annual Meeting of Stockholders to be filed pursuant to Regulation 14A within 120 days after Registrant's fiscal year end of October 31, 2010 are incorporated by reference into Part III of this Report. | III |

Table of Contents

**Randall D. Mott; age 54; Executive Vice President and Chief Information Officer**

Mr. Mott has served as Executive Vice President and Chief Information Officer since July 2005.

**James T. Murrin; age 50; Senior Vice President, Controller and Principal Accounting Officer**

Mr. Murrin has served as Senior Vice President, Controller and Principal Accounting Officer since March 2007. Previously, he served as Vice President of Finance for the former Technology Solutions Group since 2004.

**Marcela Perez de Alonso; age 56; Executive Vice President, Human Resources**

Ms. Perez de Alonso has served as Executive Vice President, Human Resources since January 2004. In December 2010, we announced that Ms. Perez de Alonso will retire from HP following the hiring of her successor.

**Shane V. Robison; age 57; Executive Vice President and Chief Strategy and Technology Officer**

Mr. Robison has served as Executive Vice President and Chief Strategy and Technology Officer since May 2002.

**Employees**

We had approximately 324,600 employees worldwide as of October 31, 2010.

**Available Information**

Our Annual Report on Form 10-K, Quarterly Reports on Form 10-Q, Current Reports on Form 8-K and amendments to reports filed or furnished pursuant to Sections 13(a) and 15(d) of the Securities Exchange Act of 1934, as amended, are available on our website at http://www.hp.com/investor/home, as soon as reasonably practicable after HP electronically files such reports with, or furnishes those reports to, the Securities and Exchange Commission. HP's Corporate Governance Guidelines, Board of Directors committee charters (including the charters of the Audit Committee, HR and Compensation Committee, and Nominating and Governance Committee) and code of ethics entitled "Standards of Business Conduct" also are available at that same location on our website. Stockholders may request free copies of these documents from:

Hewlett-Packard Company
Attention: Investor Relations
3000 Hanover Street
Palo Alto, CA 94304
(866) GET-HPQ1 or (866) 438-4771
http://www.hp.com/investor/informationrequest

**Additional Information**

Microsoft®, Windows® and Windows Mobile® are registered trademarks of Microsoft Corporation in the United States and/or other jurisdictions. Intel®, Itanium® and Intel Itanium® are registered trademarks of Intel Corporation in the United States and/or other jurisdictions. UNIX is a registered trademark of The Open Group.

**ITEM 1A. Risk Factors.**

Because of the following factors, as well as other variables affecting our operating results, past financial performance may not be a reliable indicator of future performance, and historical trends should not be used to anticipate results or trends in future periods.

15

Table of Contents

**ITEM 6. Selected Financial Data.**

The information set forth below is not necessarily indicative of results of future operations and should be read in conjunction with Item 7, "Management's Discussion and Analysis of Financial Condition and Results of Operations," and the Consolidated Financial Statements and notes thereto included in Item 8, "Financial Statements and Supplementary Data," of this Form 10-K, which are incorporated herein by reference, in order to understand further the factors that may affect the comparability of the financial data presented below.

### HEWLETT-PACKARD COMPANY AND SUBSIDIARIES
### Selected Financial Data

| | For the fiscal years ended October 31 | | | | |
|---|---|---|---|---|---|
| | 2010 | 2009 | 2008 | 2007 | 2006 |
| | In millions, except per share amounts | | | | |
| Net revenue | $ 126,033 | $ 114,552 | $ 118,364 | $ 104,286 | $ 91,658 |
| Earnings from operations[1] | $ 11,479 | $ 10,136 | $ 10,473 | $ 8,719 | $ 6,560 |
| Net earnings | $ 8,761 | $ 7,660 | $ 8,329 | $ 7,264 | $ 6,198 |
| Net earnings per share | | | | | |
| Basic | $ 3.78 | $ 3.21 | $ 3.35 | $ 2.76 | $ 2.23 |
| Diluted | $ 3.69 | $ 3.14 | $ 3.25 | $ 2.68 | $ 2.18 |
| Cash dividends declared per share | $ 0.32 | $ 0.32 | $ 0.32 | $ 0.32 | $ 0.32 |
| At year-end: | | | | | |
| Total assets | $ 124,503 | $ 114,799 | $ 113,331 | $ 88,699 | $ 81,981 |
| Long-term debt | $ 15,258 | $ 13,980 | $ 7,676 | $ 4,997 | $ 2,490 |

[1]   Earnings from operations include the following items:

| | 2010 | 2009 | 2008 | 2007 | 2006 |
|---|---|---|---|---|---|
| | | | In millions | | |
| Amortization of purchased intangible assets | $ 1,484 | $ 1,578 | $ 1012 | $ 973 | $ 656 |
| Restructuring charges | 1,144 | 640 | 270 | 387 | 158 |
| Pension curtailments and pension settlements, net | — | — | — | (517 ) | — |
| Acquisition-related charges | 293 | 242 | 41 | — | — |
| Total charges before taxes | $ 2,921 | $ 2,460 | $ 1,323 | $ 843 | $ 814 |
| Total charges, net of taxes | $ 2,105 | $ 1,733 | $ 973 | $ 690 | $ 604 |

35

# EXHIBIT E

QuickLinks -- Click here to rapidly navigate through this document

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION

**Washington, D.C. 20549**

# FORM 10-Q

**(Mark One)**

☒  **QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the quarterly period ended: January 31, 2005**

or

☐  **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the transition period from          to**

**Commission file number 1-4423**

# HEWLETT-PACKARD COMPANY

(Exact name of registrant as specified in its charter)

| | |
|---|---|
| **Delaware** | **94-1081436** |
| (State or other jurisdiction of incorporation or organization) | (I.R.S. employer identification no.) |
| **3000 Hanover Street, Palo Alto, California** | **94304** |
| (Address of principal executive offices) | (Zip code) |

**(650) 857-1501**
(Registrant's telephone number, including area code)

**(Former name, former address and former fiscal year, if changed since last report)**

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☒  No ☐

Indicate by checkmark whether the registrant is an accelerated filer (as defined in Rule 12b-2 of the Act). Yes ☒  No ☐

The number of shares of HP common stock outstanding as of February 28, 2005 was 2,895,553,951 shares.

# EXHIBIT F

New User? Register **Sign In** Help

Get the Latest Firefox

Mail My Y! Yahoo!

Search

Dow ↓ 4.01% Nasdaq ↓ 2.87%

| HOME | INVESTING | NEWS | PERSONAL FINANCE | MY PORTFOLIOS | NEW! EXCLUSIVES |

GET QUOTES   Finance Search

Wed, Aug 10, 2011, 3:45pm EDT - US Markets close in 14 mins

## Hewlett-Packard Company (HPQ)

At 3:29PM EDT: **30.19** ↓ **1.34 (4.25%)**

optionshouse
$3.95 online
[SIGN UP ▶]

**HPQ**

*Scottrade*

### Historical Prices

Get Historical Prices for:          GO

**Set Date Range**

Start Date: Mar 28 2005   Eg. Jan 1, 2010
End Date: Mar 28 2005

○ Daily
○ Weekly
○ Monthly
○ Dividends Only

First | Previous | Next | Last

**Prices**

| Date | Open | High | Low | Close | Volume | Adj Close* |
|---|---|---|---|---|---|---|
| Mar 28, 2005 | 19.82 | 19.97 | 19.60 | 19.79 | 7,698,400 | 18.76 |

\* Close price adjusted for dividends and splits.

First | Previous | Next | Last

📊 Download to Spreadsheet

Currency in USD.

TD Ameritrade

HEATMAPPING ON TRADE ARCHITECT.

• View the relative performance of stocks in graphic terms
• Zero-in on a specific index, sector or symbol
• Nothing to download, never a platform or subscription fee

TRADE FREE FOR 60 DAYS
OPEN AN ACCOUNT ▶

TD

Copyright © 2011 Yahoo! Inc. All rights reserved. Privacy Policy - About Our Ads - Terms of Service - Copyright/IP Policy - Send Feedback - Yahoo! News Network

Quotes delayed, except where indicated otherwise. Delay times are 15 mins for NASDAQ, NYSE and Amex. See also delay times for other exchanges. Quotes and other information supplied by independent providers identified on the Yahoo! Finance partner page. Quotes are updated automatically, but will be turned off after 25 minutes of inactivity. Quotes are delayed at least 15 minutes. All information provided "as is" for informational purposes only, not intended for trading purposes or advice. Neither Yahoo! nor any of independent providers is liable for any informational errors, incompleteness, or delays, or for any actions taken in reliance on information contained herein. By accessing the Yahoo! site, you agree not to redistribute the information found therein.

Fundamental company data provided by Capital IQ. Historical chart data and daily updates provided by Commodity Systems, Inc. (CSI). International historical chart data, daily updates, fund summary, fund performance, dividend data and Morningstar Index data provided by Morningstar, Inc.

# EXHIBIT G

QuickLinks -- Click here to rapidly navigate through this document

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

# FORM 10-Q

(Mark One)

☒   **QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the quarterly period ended: April 30, 2010

Or

☐   **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the transition period from          to

Commission file number 1-4423

# HEWLETT-PACKARD COMPANY
(Exact name of registrant as specified in its charter)

| | |
|---|---|
| **Delaware** | **94-1081436** |
| (State or other jurisdiction of incorporation or organization) | (I.R.S. employer identification no.) |
| **3000 Hanover Street, Palo Alto, California** | **94304** |
| (Address of principal executive offices) | (Zip code) |

**(650) 857-1501**
(Registrant's telephone number, including area code)

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 (the "Exchange Act") during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   Yes ☒   No ☐

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files).   Yes ☒   No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act.

Large accelerated filer ☒       Accelerated filer ☐       Non-accelerated filer ☐       Smaller reporting company ☐

(Do not check if a smaller
reporting company)

Indicate by check mark whether the registrant is a shell company (as defined by Rule 12b-2 of the Exchange Act).  Yes ☐  No ☒

The number of shares of HP common stock outstanding as of May 31, 2010 was 2,334,496,184 shares.

# EXHIBIT H

New User? Register **Sign In** Help | Get the Latest Firefox | Mail My Y! Yahoo!

Search | **Search Web**

Dow ↓ 4.62% Nasdaq ↓ 4.09%

| HOME | INVESTING | NEWS | PERSONAL FINANCE | MY PORTFOLIOS | NEW! EXCLUSIVES |

**GET QUOTES** Finance Search

Wed, Aug 10, 2011, 5:52pm EDT - US Markets are closed

# Hewlett-Packard Company (HPQ)

At 4:00PM EDT: **29.86 ↓ 1.67 (5.30%)**

**HPQ**

$3.95 flat-rate stocks
*E\*TRADE*

## Historical Prices

Get Historical Prices for: [ ] **GO**

### Set Date Range

Start Date: [Aug] [5] [2010]  Eg. Jan 1, 2010
End Date: [Aug] [5] [2010]

- ● Daily
- ○ Weekly
- ○ Monthly
- ○ Dividends Only

First | Previous | Next | Last

### Prices

| Date | Open | High | Low | Close | Volume | Adj Close* |
|------|------|------|-----|-------|--------|-----------|
| Aug 5, 2010 | 46.69 | 46.89 | 46.02 | 46.35 | 13,485,900 | 45.92 |

* Close price adjusted for dividends and splits.

First | Previous | Next | Last

🖬 **Download to Spreadsheet**

Currency in USD.

Copyright © 2011 Yahoo! Inc. All rights reserved. Privacy Policy - About Our Ads - Terms of Service - Copyright/IP Policy - Send Feedback - Yahoo! News Network

Quotes delayed, except where indicated otherwise. Delay times are 15 mins for NASDAQ, NYSE and Amex. See also delay times for other exchanges. Quotes and other information supplied by independent providers identified on the Yahoo! Finance partner page. Quotes are updated automatically, but will be turned off after 25 minutes of inactivity. Quotes are delayed at least 15 minutes. All information provided "as is" for informational purposes only, not intended for trading purposes or advice. Neither Yahoo! nor any of independent providers is liable for any informational errors, incompleteness, or delays, or for any actions taken in reliance on information contained herein. By accessing the Yahoo! site, you agree not to redistribute the information found therein.

Fundamental company data provided by Capital IQ. Historical chart data and daily updates provided by Commodity Systems, Inc. (CSI). International historical chart data, daily updates, fund summary, fund performance, dividend data and Morningstar Index data provided by Morningstar, Inc.