**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

SAGINAW POLICE & FIRE PENSION FUND,

Plaintiff,

v.

HEWLETT-PACKARD COMPANY et al.,

Defendants.

Case No.: 5:10-CV-4720 EJD

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

**(Re: Docket Item Nos. 68, 69, 72)**

## I. INTRODUCTION

Presently before the court are Defendants' motions to dismiss Plaintiff Saginaw Police & Fire Pension Fund's ("Saginaw") Derivative Shareholder Complaint ("Complaint"). Defendants are Marc L. Andreessen, Lawrence T. Babbio, Sari M. Baldauf, Rajiv L. Gupta, John H. Hammergren, Joel Z. Hyatt, John R. Joyce, Robert L. Ryan, Lucille S. Salhany, G. Kennedy Thompson ("Director Defendants"), Mark V. Hurd ("Hurd"), and Nominal Defendant Hewlett-Packard Company ("HP").

For the reasons discussed below, Defendants' motions to dismiss the Complaint will be granted with leave to amend.[1]

[1] The court DENIES Defendants' requests for judicial notice, as the court does not find the materials submitted for judicial notice necessary to the adjudication of the motion at this time. Furthermore, the court DENIES Plaintiff's motion for leave to file surreply (see Docket Item No. 93) at this time.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

This is a shareholders' derivative action suit brought for the benefit of Nominal Defendant HP against current and former HP officers and directors. According to the Complaint, Plaintiff has been a shareholder of HP since November 2, 2007. See Complaint, Docket Item No. 1, at ¶ 17. HP is a Delaware corporation, headquartered in Palo Alto, California. Id. at ¶ 18. The company is a global provider of products, technologies, software, solutions and services to individual consumers and businesses. Id. The individually named defendants are current and former officers and directors of HP. Defendants Andreessen, Babbio, Baldauf, Gupta, Hammergren, Hyatt, Joyce, Ryan, Salhany, and Thompson ("Director Defendants") are current directors of HP. Id. at ¶¶ 19-29. The Director Defendants comprised HP's Board at the time the complaint was filed and each served on HP's Board for at least one part of the 2007-2009 period. Id. Defendant Hurd served as the CEO of HP from 2005-2010 and was Chairman of HP's Board of Directors from September 2006 until August 2010. Id. at ¶ 34. According to the Complaint, Hurd was paid a salary of $30,332,527 in 2009. Id. at ¶¶ 34-36. HP's 2009 Proxy Statement reported that the 2009 salary paid to Defendant Hurd was based on "solid financial results in a difficult economic environment" and his "significant achievement on a broad range of non-financial goals, including the integration of acquired companies, talent management and succession planning." Id. at ¶ 38.

On October 19, 2010, Plaintiff filed this action for breach of fiduciary duties and unjust enrichment on behalf of HP against several of HP's current and former officers and directors, alleging violations of the federal False Claims Act ("FCA"), the Anti-Kickback Act of 1986 ("AKA"), Truth in Negotiations Act ("TINA"), and the Foreign Corrupt Practices Act ("FCPA"). Plaintiff claims that from January 1, 2002 to December 31, 2009, HP violated the AKA and FCA by paying "kickbacks" to government contractors and vendors in order to influence the award of contracts. Id. at ¶ 4. Plaintiff seeks to assert claims that Defendants breached their fiduciary duty to HP by allowing employees to engage in illegal activity and rewarding such illegal activity. Additionally, Plaintiff asserts unjust enrichment claims. Id. at ¶ 91.

The Complaint alleges that in late 2006 or early 2007 the U.S. Government notified HP that certain *qui tam* plaintiffs alleged that HP had engaged in contracting practices that violated the

FCA, AKA, and TINA. Id. at ¶¶ 84-85. On April 12, 2007, the U.S. Department of Justice ("DOJ") filed a complaint intervening in the *qui tam* actions against HP, alleging violations of the FCA and AKA. Id. at ¶¶ 8-9, 85. According to the DOJ complaint, HP is alleged to have paid kickbacks to systems integrators that had been retained by the U.S. Government to provide impartial advice and act on the Government's behalf in making decisions to select information technology vendors and to price information technology products and services. Id. at ¶¶ 67-77. HP acknowledged the existence of the Government's complaint in its Securities and Exchange Commission ("SEC") Form 10-Q, dated June 8, 2007. Id. at ¶ 86. Similarly, HP's annual report on Form 10-K, dated December 18, 2007, contained a disclosure regarding the Government's complaint. Id. at ¶ 88.

The complaint was settled on August 30, 2010 and announced in HP's September 2010 quarterly report. Id. at ¶¶ 9-10. HP paid $55 million to settle the complaint. Id. at ¶ 92. The settlement agreement contains language indicating that HP did not admit liability with respect to any of the Government's contentions. See Ex. to Complaint at 7-8, Docket Item No. 1-1.

Plaintiff claims that as of June 8, 2007, the date of filing of SEC Form 10-Q, HP had reasonable grounds to believe that violations of AKA may have occurred, but allowed the violations to continue until December 2009 and continued to pay Defendant Hurd "oversized compensation" while being aware of allegations that Hurd actively participated in the kickback scheme.[2] Id. at ¶¶ 12, 80-90.

Plaintiff further alleges that in December 2009, HP learned that personnel at a former HP German subsidiary had been arrested for allegedly paying bribes to certain Russian officials from 2001 through 2006 in connection with the procurement of a contract in Russia. Id. at ¶¶ 10, 95, 97-98, 101. In September 2010, HP announced a pending federal investigation by DOJ and the SEC of HP regarding payments to foreign officials, in violation of the FCPA. Id. at ¶¶ 101-03.

[2] As of June 8, 2007, only six of the ten named Director Defendants (Babbio, Baldauf, Hammergren, Ryan, Salhany, and Thompson) were on HP's Board. See Docket Item No. 1, at ¶¶ 20-21, 23, 26-28. Defendants Hyatt and Joyce joined the Board in 2007 and, in addition to the above named Defendants, signed HP's annual report on December 18, 2007. Id. at ¶ 88. Defendants Andreessen and Gupta joined the HP Board in 2009. Id. at ¶¶ 19, 22. As such, none of the claims before 2009 apply to them.

United States District Court
For the Northern District of California

As a result of this alleged breach of fiduciary duty, Plaintiff requests: (1) a determination that the action is properly brought as a derivative action and that demand is excused; (2) damages from all defendants in favor of HP; (3) restitution in favor of HP in the form of disgorgement from the individual defendants; (4) a direction that HP implement corporate governance reforms; and (5) Plaintiff's costs and fees associated with this action.

This matter was twice stayed by Judge Koh, to whom the matter was originally assigned, to allow an independent Board committee to respond to a demand by another shareholder and to investigate the allegations in this matter and other derivative cases. See Docket Item Nos. 58, 63, 68. On April 25, 2011, this matter was reassigned to this court. On May 5, 2011, the parties stipulated to another stay of this action. See Docket Item No. 65.

On August 15, 2011, Nominal Defendant HP and Director Defendants filed separate motions to dismiss Plaintiff's Complaint. See Docket Item Nos. 68, 69. Defendant Hurd filed a motion to dismiss on August 19, 2011. See Docket Item No. 72. Plaintiff filed a combined opposition to Defendants' motions on September 19, 2011. See Docket Item No. 77. On October 11, 2011, Defendants filed reply briefs to Plaintiff's opposition. See Docket Item Nos. 83, 84, 86.

## III. JURISDICTION

Federal courts are courts of limited jurisdiction, possessing only that power authorized by Article III of the United States Constitution and statutes enacted by Congress pursuant thereto. See Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986). Plaintiff asserts federal jurisdiction based upon the parties' diversity of citizenship. Jurisdiction is proper under 28 U.S.C §1332(a)(1), as there is complete diversity between Plaintiff and Defendants and the amount in controversy exceeds $75,000. See Docket Item No. 1, at ¶ 15. Venue is proper under 28 U.S.C. §1391(a) because HP maintains its principal executive offices in Palo Alto, California. Id. at ¶ 16.

## IV. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed if it fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted).

United States District Court
For the Northern District of California

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Recitals of the elements of a cause of action and conclusory allegations are insufficient. Id.

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). Moreover, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Id. at 555, 570. In considering the sufficiency of a claim, the court must accept as true all of the factual allegations contained in the complaint. Id. at 555-56. However, the court is not required to accept as true legal conclusions cast in the form of factual allegations. Id. at 555.

If dismissal is granted under Rule 12(b)(6), leave to amend should be allowed unless the pleading could not possibly be cured by the allegation of other facts. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000). If amendment would be futile, however, a dismissal may be ordered with prejudice. Dumas v. Kipp, 90 F.3d 386, 393 (9th Cir. 1996) (internal quotations omitted).

## V. DISCUSSION

### A. Shareholder Derivative Suits

A shareholder derivative suit is a uniquely equitable remedy in which a shareholder asserts on behalf of a corporation a claim belonging not to the shareholder, but to the corporation. Aronson v. Lewis, 473 A.2d 805, 811 (Del. 1984) (overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000)). Pursuant to Federal Rule of Civil Procedure 23.1, which governs derivative actions, a shareholder's complaint must state with particularity "any effort by the plaintiff to obtain the desired action from the directors" and "the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1. Rule 23.1 imposes a higher standard of pleading than Rule 8(a).

### B. Demand Futility

Defendants move to dismiss the complaint on the ground that Plaintiff did not make a demand on HP's Board of Directors, as required by Delaware law, and that Plaintiff failed to plead

particularized facts excusing the demand, as required under Rule 23.1. Plaintiff concedes that it did not make a pre-suit demand on HP's Board. See Docket Item No. 1, at ¶¶ 13-14. However, Plaintiff contends that the demand upon the Board would have been futile. Id.

**1. Choice of Law**

When a federal court sits in diversity, it looks to the forum state's choice of law rules to determine the controlling substantive law. Patton v. Cox, 276 F.3d 493, 495 (9th Cir. 2002). Here, because HP has its corporate headquarters and main place of business in Palo Alto, California, the court applies California state law.

Pursuant to the "internal affairs" doctrine, which is generally followed by courts in California, "the law of the state of incorporation governs liabilities of officers or directors to the corporation or its shareholders." In re Sagent Tech., Inc., Derivative Litig., 278 F. Supp. 2d 1079, 1086 (N.D. Cal. 2003); see Cal. Corp. Code § 2116. Additionally, the demand requirements for a shareholder derivative suit are determined by the law of the state of incorporation. Kamen v. Kemper Financial Services, Inc., 500 U.S. 90, 96, 108-09 (1991) ("the function of the demand doctrine . . . is a matter 'substance' not 'procedure' . . . . [Courts] must apply the demand futility exception as it is defined by the law of the state of incorporation"); Potter v. Hughes, 546 F.3d 1051, 1054 n.1 (9th Cir. 2008) ("the substantive demand requirement is an issue of state law"); In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 990 (9th Cir. 1999) (superseded by statute on other grounds). Accordingly, because HP is incorporated in Delaware, the court applies Delaware law to determine whether demand is excused.

**2. Aronson and Rales Tests**

Under Delaware law, "directors of a corporation and not its shareholders manage the business and affairs of the corporation, and accordingly, the directors are responsible for deciding whether to engage in derivative litigation." Levine v. Smith, 591 A.2d 194, 200 (Del. Ch. 1991) (internal citation omitted) (overruled on other grounds by Brehm, 746 A.2d 244). Because directors are empowered to manage or direct the business affairs of the corporation, a shareholder seeking to bring a derivative action must first make a demand on that corporation's board of directors, giving the board an opportunity to examine the alleged grievance to determine whether

pursuing the action is in the best interest of the corporation. Aronson, 473 A.2d at 812. The right of a shareholder to prosecute a derivative suit is limited to situations where the shareholder has demanded that the directors pursue the claim and they have wrongfully refused to do so or where demand is excused because the directors are incapable of making impartial decisions regarding such litigation. Rales v. Blasband, 634 A.2d 927, 932 (Del. 1993) (quoting Levine, 591 A.2d at 200).

To prove that demand is excused, a shareholder must plead with particularity the reasons why such demand would have been futile. Fed. R. Civ. P. 23.1. Under Delaware law, where a shareholder challenges a business decision made by the board, failure to make a demand may be excused if a plaintiff can raise a reasonable doubt that (1) a majority of the board is disinterested or independent, or (2) the challenged act was a product of the board's valid exercise of business judgment. Aronson, 473 A.2d at 814. If either part of the Aronson test is satisfied, demand is excused. Brehm, 746 A.2d at 256. However, where a plaintiff fails to adequately allege particularized facts demonstrating that either of the Aronson prongs has been met, the complaint must be dismissed. See Aronson, 473 A.2d 805.

In claims arising out of board inaction, or where the board that would be considering the demand did not make the challenged business decision, a plaintiff must provide particularized factual allegations that establish a reasonable doubt that the board that would be addressing the demand is disinterested or independent. Rales, 634 A.2d at 933-34. This inquiry is essentially the same as the first prong of the Aronson test. Under Rales, a two-pronged inquiry requires courts to analyze "whether a complaint pleads particularized facts sufficient to demonstrate that either (1) the underlying conduct being challenged renders any of the directors 'interested' and, if so, whether any of the other directors are compromised in their ability to act independently of the interested directors; or (2) at least half of the directors face a sufficiently substantial threat of personal liability as to the conduct alleged in the complaint to compromise their ability to act impartially on a demand." Desimone v. Barrows, 924 A.2d 908, 928 (Del. Ch. 2007) (quoting Guttman v. Huang, 823 A.2d 492 (Del. Ch. 2003)).

United States District Court
For the Northern District of California

For both tests, directorial interest exists whenever divided loyalties are present, where the director will receive a personal financial benefit from a transaction that is not equally shared by the stockholders, or when a corporate decision will have a "materially detrimental impact" on a director but not on the corporation or its stockholders. Rales, 634 A.2d at 936; Aronson, 473 A.2d at 812. Independence exists when a director's decision is based on "the corporate merits of the subject before the board rather than extraneous considerations or influences." Aronson, 473 A.2d at 816.

Here, Plaintiff contends that demand is excused because the Board's challenged decisions are not protected by the business judgment rule. Plaintiff alleges that the Board was aware that HP's program violated the AKA and FCA, yet did not take appropriate action and further chose to pay then-CEO Hurd $97 million in compensation. Plaintiff claims that the "knowing use of illegal means to pursue profit for the corporation is director misconduct and not protected by the business judgment rule" and, at minimum, creates a reasonable doubt that the decisions were a valid exercise of business judgment. See Docket Item No. 1, at ¶ 104. Plaintiff further contends that demand is excused because the Board members face a substantial likelihood of liability and are therefore interested in the decision to investigate. Id. at ¶¶ 105-06.

**3. Failure to Act Upon Knowledge of Illegal Conduct**

Plaintiff claims that the HP Board knew of illegal conduct, but failed to take action to stop the illegal conduct. Because Plaintiff alleges board inaction, the demand futility for this claim is analyzed under Rales. As discussed above, the Rales test requires that plaintiff provide particularized factual allegations sufficient to establish that either (1) any of the directors are interested and that other directors are compromised in their ability to act independently of the interested directors, or (2) that at least half of the directors face a sufficiently substantial threat of personal liability. Desimone, 924 A.2d at 928.

Plaintiff claims that all the Director Defendants are interested in the decision to investigate and prosecute claims relating to HP's violations of the FCA and AKA, as the Director Defendants may be subject to liability based on their knowledge that HP employees were submitting false claims to the U.S. Government. Under Delaware law, "the mere threat of personal liability for

United States District Court
For the Northern District of California

approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors . . . ." Aronson, 473 A.2d at 815. A plaintiff may not "bootstrap allegations of futility" by pleading merely that "the directors participated in the challenged transaction or that they would be reluctant to sue themselves." Blasband v. Rales, 971 F.2d 1034, 1049 (3rd Cir.1992) (citing Delaware law). A plaintiff must plead "that a majority of the board that must consider a demand acted wrongfully . . . [and] the directors face a 'substantial likelihood' of personal liability." Guttman, 823 A.2d at 501. A "substantial likelihood" of personal liability requires "well-pled, particularized allegations of fact detailing the precise roles that these directors played at the company, the information that would have come to their attention in those roles, and any indication as to why they would have perceived [the alleged violation]." Id. at 503.

Plaintiff has not pled particularized facts sufficient to prove that the Director Defendants face a substantial likelihood of personal liability for the alleged illegal marketing activity at HP. In fact, Plaintiff does not accuse Board members of engaging in illegal activity, but only states that the Board failed to act on information that was available to it about the actions of other employees at HP. Such a claim, that directors face a substantial risk of liability for failing to engage in proper supervision of company employees or to institute corrective measures, was proffered in In re Caremark Int'l Inc. Derivative Litig., 698 A.2d 959 (Del. Ch. 1996).[3] However, under such a claim, there is "no ground for director liability, so long as the court determines that the process employed was either rational or employed in a good faith effort to advance corporate interests." Id. at 967. According to Caremark, to show that directors breached their duty of care by failing to adequately control employees, "plaintiffs would have to show either (1) that the directors knew or (2) should have known that violations of law were occurring and, in either event, (3) that the directors took no steps in a good faith effort to prevent or remedy the situation, and (4) that such a failure proximately resulted in the losses complained of . . . ." Id. at 971; see also Guttman, 823 A.2d 492; Desimone, 924 A.2d 908.

[3] Caremark was not adjudicating a motion to dismiss for failure to state a claim, but rather a motion to approve as fair and reasonable a proposed settlement. Caremark, 698 A.2d 959.

United States District Court
For the Northern District of California

While Plaintiff claims that as of 2007 the Board knew of violations because of the DOJ litigation, Defendants claim that there are no particularized allegations that any member of the Board knew that HP was engaging in illegal conduct or failed to implement appropriate systems that would allow the Board to remain apprised of HP's employees' conduct. The fact that HP was named as a defendant in the DOJ litigation or was the subject of FCPA investigations is not enough to conclude that the Director Defendants acted improperly and face a substantial risk of liability. See Desimone, 924 A.2d at 940 ("Delaware courts routinely reject the conclusory allegation that because illegal behavior occurred, internal controls must have been deficient, and the board must have known so.").

Furthermore, Plaintiffs acknowledge that the HP Board had an audit committee with a charter and other guidance setting forth committee duties. See Docket Item No. 1, at ¶¶ 30, 56-58. The Complaint also notes that the Board had "Corporate Governance Guidelines," including ethical and reporting standards, and HP had specific business standards prohibiting bribery. Id. at ¶¶ 49, 51-55. The HP Board received regular reports from the Ethics and Compliance Committee. Id. ¶ 54-55. Plaintiff does not allege that any director failed to monitor or oversee such systems and controls in place at HP. Additionally, the retention of a consultant by HP in 2007 suggests that the Board chose to take action regarding the DOJ's claims, rather than failing to act on them. Plaintiff does not allege that the consultants ever informed the Defendants of potential violations nor that the Director Defendants disregarded any advice from the consultants regarding compliance or contracting practices. Moreover, Plaintiff does not allege that before 2007 Defendants were aware of any illegal conduct.

Regarding the FCPA claim, there is no allegation that the Board was aware of or disregarded information about the alleged bribery in Russia before December 2009.[4]

In sum, Plaintiff has failed to allege particularized facts that any of the Director Defendants knew of violations and took no steps in good faith to prevent or remedy the situation. As such, Plaintiff has not met its burden of showing that the Defendants face a substantial likelihood of

[4] In spite of Nominal Defendant HP's claim that Plaintiff has abandoned the FCPA claim, this court determines that Plaintiff has not abandoned any of its claims.

liability and demand is not excused for this claim. Accordingly, Defendants' motions to dismiss this claim is granted.

**4. Compensation Paid to Defendant Hurd**

Plaintiff argues that the Director Defendants did not exercise valid business judgment when awarding Defendant Hurd's compensation. Because this claim involves a Board decision, the court proceeds under the Aronson analysis. Under the first prong of the Aronson test, Plaintiff has not alleged that any Director Defendants received any personal benefit from the challenged compensation paid to Defendant Hurd or that any director was dominated or controlled by Hurd at the time the complaint was filed. Without such a showing, Plaintiff does not raise a reasonable doubt that a majority of the Board was independent or disinterested.

Under the second prong of the Aronson test, Plaintiff must raise a reasonable doubt that the transaction is entitled to the protection of the business judgment rule. In re Walt Disney Co. Derivative Litig., 825 A.2d 275, 286 (Del. Ch. 2003). The business judgment rule is "a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interest of the company." Aronson, 437 A.2d at 812. Under the business judgment rule, "directors are entitled to a presumption that they were faithful to their fiduciary duties . . . . [and] the burden is upon the plaintiff in a derivative action to overcome that presumption." Beam v. Stewart, 845 A.2d 1040, 1048-49 (Del. 2004). To rebut the business judgment rule presumption, "plaintiffs must plead particularized facts sufficient to raise (1) a reason to doubt that the action was taken honestly and in good faith or (2) a reason to doubt that the board was adequately informed in making the decision." In re J.P. Morgan Chase & Co. S'holder Litig., 906 A.2d 808, 824 (Del. Ch. 2005) (quoting In re Walt Disney Co., 825 A.2d at 286). "[A] decision made by a loyal and informed board will not be overturned by the courts unless it 'cannot be attributed to any rational business purpose.'" Cede, 634 A.2d at 361 (quoting Sinclair Oil Corp., 280 A.2d 717, 720 (Del. 1971)); see In re Walt Disney Co., 825 A.2d at 286-87. In Delaware, corporations are empowered to "[a]ppoint such officers and agents as the business of the corporation requires and to pay or otherwise provide for them suitable

compensation." 8 Del. C. § 122(5). A board's decision on executive compensation is "entitled to great deference." Brehm, 746 A.2d at 263.

Plaintiff argues that the Director Defendants did not exercise valid business judgment when awarding Defendant Hurd's compensation. However, the Complaint fails to allege particularized facts showing that HP's Board was not adequately informed in making the decision regarding CEO compensation. In fact, Plaintiff argues that the Board was informed of alleged illegal misconduct when it made the compensation decision because it had read the DOJ complaint. Plaintiff contends that HP directors were on notice of supposedly illegal activity and still authorized $97 million in compensation to Defendant Hurd.

Moreover, Plaintiff does not allege particularized facts showing that there is reason to doubt that the Board's action was taken in good faith. "To prevail on . . . a bad faith claim, the plaintiff must overcome the general presumption of good faith by showing that the board's decision was so egregious or irrational that it could not have been based on a valid assessment of the corporation's best interest." White v. Panic, 783 A.2d 543, 554 n.36 (Del. 2001).

In the Complaint, Plaintiff does not show that Hurd's compensation was egregious or irrational. Plaintiff notes that the Board based Hurd's compensation on HP's "superior financial results, as well as significant achievement on a broad range of non-financial goals, including strategic acquisition, talent management, and succession planning." See Docket Item No. 1, at ¶¶ 38-40. These standards of evaluation indicate that the Board did, in fact, act in good faith in determining Hurd's compensation.

Plaintiff has failed to allege particularized facts to meet either prong of the Aronson test excusing demand. Accordingly, Defendant's motion to dismiss this claim is granted.

**C. Unjust Enrichment**

Plaintiff alleges unjust enrichment against the Director Defendants due to compensation they received for their services as directors of HP. As discussed above, Plaintiff has not pled facts showing that the Director Defendants breached their fiduciary duties to HP. Accordingly, demand is not excused as to this claim, as there are no specific allegations explaining why demand would be futile.

United States District Court
For the Northern District of California

## VI. CONCLUSION

For the reasons discussed above, the court finds that Plaintiff has not pled particularized facts sufficient to prove that demand for any claim is excused. Therefore, Defendants' motions to dismiss the Complaint for failure to state a claim are GRANTED.

IT IS HEREBY ORDERED that Plaintiff's Complaint is dismissed with leave to amend.

**IT IS SO ORDERED.**

Dated: March 21, 2012

EDWARD J. DAVILA
United States District Judge